**Michael Sidney LUFT, Plaintiff,**

v.

**CROWN PUBLISHERS, INC.,
Audiofidelity Enterprises, and
Daniel Pugliese, Defendants.**

**No. 85 Civ. 9051 (KTD).**

United States District Court,
S.D. New York.

Aug. 29, 1991.

See also 906 F.2d 862.

Haythe & Curley (James P. Lynn, James J. Harrington, of counsel), New York City, for plaintiff Michael Sidney Luft.

Eisenberg Tanchum Rubin & Levy (James J. Levy, of counsel), New York City, for defendant Daniel Pugliese.

OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Michael Sidney Luft commenced this copyright infringement action in November 1985 against defendants Crown Publishers, Inc. ("Crown"), Audiofidelity Enterprises, Inc., and Dante Pugliese (incorrectly named in this action as "Daniel" Pugliese.) A default judgment was entered by me in January 1988. Luft subsequently settled the action against Crown and has been unable to proceed against Audiofidelity because it is stayed in bankruptcy at this time. Pursuant to the January 1988 default judgment, an inquest on damages was held before Magistrate Judge James C. Francis IV on August 31, 1989. Familiarity with those proceedings is assumed. On January 17, 1990, I entered judgment in favor of Luft and against Pugliese in the amount of $102,147.64 which constitutes statutory damages, attorney's fees, and costs.

The issue whether Pugliese, who was one of several officers and shareholders of the now bankrupt Audiofidelity, could be held

liable for all damages stemming from the infringements was not raised before the Magistrate Judge. A trial of this issue was conducted on July 8, 1991. The following constitutes my findings of fact and conclusions of law.

## STATEMENT OF FACTS

Luft is the sole and exclusive owner of the copyrights for 26 one-hour television programs known as "The Judy Garland Show" ("the Shows"). Copyrights for the Shows were duly registered with the Register of Copyright.

Until August 1988, Pugliese was the president of Audiofidelity, a publicly traded New Jersey corporation. Audiofidelity purportedly purchased the master recordings at issue in this case (containing performances of the singer Judy Garland) from George Tucker pursuant to a written agreement dated June 1, 1983. Tucker purported to have obtained his rights at a sheriffs sale of the property at issue. Luft, however, gave notice of his rights in the copyrighted materials to Pugliese sometime in 1984. Apparently, Audiofidelity manufactured, distributed, and sold record and tape productions which consisted of copies of material performed on the Shows and protected by Luft's copyrights after notice was given.[1]

## DISCUSSION

Pugliese maintains that he should not be held jointly and severally liable for Audiofidelity's infringement because he was a mere shareholder of the corporation, not a proper party to alert for potential infringement and, in any event, he did not receive proper notice of the infringement. I disagree. Although Magistrate Judge Francis IV found that Pugliese was not a wilful infringer, he was knowledgeable of the infringement and moderately at fault therefore. After having received a letter notifying of the possibility of infringement, Pugliese, the once president and not mere shareholder of audiofidelity disregarded the notice, never having thoroughly researched the title.

Indeed, in response to my query of Pugliese's counsel at trial whether he would rest on his laurels after having received letter notification of a potential cloud on title for property that he otherwise thought that he owned, counsel conceded that he would have researched the matter further, attempting to clear such title defect. Pugliese never accorded the same import to Luft's notice where he well should have taken claims of potential infringement seriously.

All participants of a copyright infringement are jointly and severally liable. *Chappell & Co. v. Frankel*, 285 F.Supp. 798, 800 (S.D.N.Y.1968). "All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir.1985). Likewise a company president who supervises the selection, manufacture, distribution and sale of infringing recordings is jointly and severally liable for damages caused by the infringement. *Chappell & Co. v. Frankel*, 285 F.Supp. at 800–01.

Nonetheless, Pugliese avers that since he was one of many officers of a publicly traded corporation, did not exercise total sole control of its operations, nor personally benefitted from Audiofidelity's actions any more than any other shareholders would, he should not be held liable for any damages or attorneys fees awarded to Luft resulting from Audiofidelity's actions. These assertions are incomplete. Indeed, Pugliese negotiated the purchase of the infringing recordings, and he supervised their manufacture, distribution, and sale. Moreover, there is no indication that he profited the same as other shareholders in the corporation. Pugliese had a 65 percent interest in the corporation and he was Au-

---

1. Defendants' purported claim of ownership of the copyrighted materials had previously been held by this court to be invalid. *See Kingsrow Enterprises, Inc. v. Metromedia, Inc.*, 397 F.Supp. 879, 881 (S.D.N.Y.1975) (Frankel, J.), *later proc.*, 203 U.S.P.Q. 489, 1978 WL 952 (S.D.N.Y.1978).

diofidelity's president. Surely, he benefitted from the profitability of selling the infringing materials. *See RCA/Ariola International, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773 (8th Cir.1988) ("prerequisites for vicarious liability for copyright infringements are: (1) the right and ability to supervise the infringing activity; and (2) an obvious and direct financial interest in exploitation of copyrighted materials.") After being notified of a problem with title to the recordings, Pugliese should have immediately researched this issue. Instead, he chose to continue the manufacture of infringing materials. Accordingly, Pugliese is a joint tortfeasor, jointly and severally liable for damages.

Finally, Pugliese argues that it is an untenable result to hold an officer of a major corporation liable on the basis that one letter directed to that officer was sufficient to alert the officer as to a corporate wrong. Audiofidelity is not a fortune 500 company with several subsidiaries. At trial, it was adduced that it had as few as thirty or forty employees. Therefore, the notice provided Pugliese, an officer who was integrally associated with the corporation and its involvement in fostering the infringements, was sufficient to alert Audiofidelity of its corporate wrongdoing. Audiofidelity's infringement, occurring after notice was provided to Pugliese, is thus chargeable to Pugliese as a joint and several tortfeasor.

For the foregoing reasons, judgment in favor of Luft stands and Pugliese may be held accountable for having to pay the judgment that might have otherwise been lodged against Audiofidelity had it not been stayed in bankruptcy. Additionally, reasonable attorneys fees are awarded Luft in connection with this litigation. Luft is hereby ordered to submit a proposed judgment on ten days notice within twenty days of the date of this order.

SO ORDERED.