EZ–TIXZ, INC., Plaintiff,

v.

HIT–TIX, INC., Eric Krebs Theatrical Management, Inc., Paul Morer Productions, Inc., Eric Krebs and Paul Morer, Defendants.

No. 93 Civ. 3791 (JGK).

United States District Court,
S.D. New York.

March 29, 1996.

David Just, Lucas & Just, New York City, for plaintiff.

A. Joseph Tandet, New York City, for defendants.

## ORDER AND OPINION

KOELTL, District Judge:

Defendants Eric Krebs Theatrical Management, Inc. ("EKTM"), Paul Morer Productions, Inc. ("PMPI"), Eric Krebs, and Paul Morer (the "co-defendants") have moved for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing all causes of action against them contained in the Complaint. In addition, all of the defendants in this action have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiff's claims for statutory damages and attorney's fees as well as its claims for misappropriation of trade secrets and for unfair competition. For the reasons that follow, the motions are granted in part and denied in part.

## I.

The plaintiff Ez–Tixz creates and operates computer programs for theater ticket sales. Ez–Tixz developed a program called the Ez–Tixz Ticket Agency Management product ("the Program"). In May 1988, the defendant Hit–Tix agreed to pay for the development costs of the Program and to serve as a test installation for the Program. The plaintiff alleges this agreement required Hit–Tix to pay licensing fees if it wished to continue using the program once it was fully developed, but that Hit–Tix refused to do so. Ez–Tixz subsequently brought this suit seeking revenues and profits for Hit–Tix's allegedly unauthorized use of the Program. The plaintiff alleges that Hit–Tix's continued use of the Program constitutes copyright infringement and breach of contract. The plaintiff also claims that the co-defendants are liable for Hit–Tix's alleged infringement under the theories of vicarious liability, contributory infringement, and alter ego liability.

Hit–Tix was formed in 1987 by three corporations, EKTM, PMPI, and Whitbell Productions, Inc. ("Whitbell"). EKTM owns 50 percent of Hit–Tix, and PMPI and WPI each own 25 percent of Hit–Tix. EKTM is wholly owned by Krebs and his wife; PMPI is wholly owned by Morer; and WPI is wholly owned by Joyce A. Whitcomb and Gail Bell, who are not parties in the current action. (Gail Bell Aff. ¶ 3.)

The plaintiff alleges that the individual defendants Krebs and Morer personally controlled Hit–Tix through their respective corporations, EKTM and PMPI. According to the plaintiff, many of the corporation's decisions, including new equipment purchases and personnel decisions, were made by a committee consisting of Bell, Morer, and Krebs. (Bell Aff. ¶ 10.) As the majority stockholder, Krebs through EKTM controlled the committee and had ultimate control over Hit–Tix's entire operation. (Bell Aff. ¶¶ 3, 10–13; Edwin J. Jaufmann, Jr. Aff. ¶ 6.) The plaintiff alleges that Bell ran the day-to-day operations of Hit–Tix, but that when she was not available, Morer assumed control of the day-to-day operations. (Bell Aff. ¶ 10.) When Bell left Hit–Tix to work for Ez–Tixz, Krebs and Morer, through their respective corporations, allegedly ran Hit–Tix on their own. (Bell Aff. ¶ 16.) Morer also signed contracts on behalf of Hit–Tix, including the one at issue in this case, and until 1990 held himself out as chief executive officer of Hit–Tix. (Bell Aff. at 19, 20; Pl's Exh. 1.) In addition, Morer allegedly also had a Hit–Tix credit card which was used to make purchases on behalf of Morer, PMPI, and EKTM, as well as Hit–Tix. (Bell Aff. ¶ 19; Pl's Exh. 8–14.)

The plaintiff also claims that the co-defendants were personally involved with the alleged copyright infringement that is the center of this lawsuit. The plaintiff claims that Morer participated in discussions between Hit–Tix and Ez–Tixz concerning the Program, (Def.'s Exh. G, Jaufmann Dep. at 75), and that Morer and Bell discussed the proposal with Krebs. In addition, the plaintiff alleges that Morer personally represented that Hit–Tix would pay Ez–Tixz licensing fees. (Studnicka Dep. at 48, 57.) Although the plaintiff concedes that Krebs was a "computer illiterate," the plaintiff alleges that there was a copy of the Program on EKTM's computer. (Bell Aff. ¶ 16; Studnicka Aff. ¶ 21.) When Ez–Tixz's predecessor told Hit–Tix that the Program was fully operational and thus Hit–Tix would have to begin paying royalties for its continued use, Krebs, Morer, and Bell allegedly decided to take the position that the Program was not yet completed and that therefore Hit–Tix did not need to pay royalty fees. (Bell Aff. ¶¶ 7, 13.) Jedwin Jaufmann, Jr., the chairman and CEO of Ez–Tixz, contends that Krebs was aware that Hit–Tix was infringing Ez–Tixz copyright. Jaufmann states in his affidavit that he specifically recalls that in March 1993 he told Krebs that he was infringing Ex–Tixz's copyright. (Jaufmann Aff. ¶ 8.)

## II.

The plaintiff contends that the moving defendants are liable for the infringing acts of Hit–Tix under the theories of vicarious liability, contributory infringement, and alter ego liability. The co-defendants claim that the plaintiff has failed to proffer sufficient evidence to support the imposition of third-party liability and that they are therefore

entitled to summary judgment dismissing all claims made against them in the Complaint.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

■■■■ Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright…." Although the Copyright Act expressly creates liability only for direct copyright infringers, it is well-established that third parties can be held liable for the infringing activities of another. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 434–35, 104 S.Ct. 774, 784–85, 78 L.Ed.2d 574 (1984); *see also Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir.1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers."). There are two doctrines that establish third-party liability in copyright law: contributory infringement and vicarious liability. *See Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971); *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564–65 (S.D.N.Y.1995) (Sotomayor, J.); *Demetriades v. Kaufmann*, 690 F.Supp. 289, 292–94 (S.D.N.Y.1988) (Goettel, J.) (distinguishing the two doctrines).

■■■■ Contributory infringement liability is based upon the defendant's relationship to the direct infringement: if the defendant was implicated in the acts constituting the direct infringement, it may be held liable for contributory infringement. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin*, 443 F.2d at 1162. A party without actual knowledge of the particular instances of infringement may still be found liable as a contributory infringer; constructive knowledge is sufficient to establish liability. *See R & R Recreation Products, Inc. v. Joan Cook Inc.*, No. 91 Civ. 2589, 1992 WL 88171, at *3 (S.D.N.Y. Apr. 14, 1992) (Martin, J.); *Screen Gems–Columbia Music, Inc. v. Mark–Fi Records, Inc.*, 256 F.Supp. 399, 403–04 (S.D.N.Y.1966). Corporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement. *See Luft v. Crown Publishers, Inc.*, 772 F.Supp. 1378 (S.D.N.Y.1991) (Duffy, J.) (holding individual who served as president and owned 65 percent of infringing company's stock vicariously liable for copyright infringement); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y. 1981); *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510, 518 (S.D.N.Y.1985) (Weinfeld, J.) ("An individual who causes a corporation defendant to infringe copyright and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement."); *H.M. Kolbe Co. v. Shaff*, 240 F.Supp. 588 (S.D.N.Y.), *aff'd*, 352 F.2d 285 (2d Cir.1965).

■■■■ In contrast, vicarious liability rests not on the defendant's relationship to the direct infringement but rather on the defendant's relationship to the direct infringer. Vicarious liability may exist "[w]hen the right and ability to supervise coalesce with an obvi-

ous and direct financial interest in the exploitation of copyrighted materials ... even in the absence of actual knowledge that the copyright monopoly is being impaired...." *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963); *see also Peer Int'l Corp.,* 887 F.Supp. at 565 (quoting *Shapiro* ); *Banff Ltd. v. Limited, Inc.,* 869 F.Supp. 1103, 1107–10 (S.D.N.Y.1994) (Haight, J.) (discussing vicarious liability); *Artists Music, Inc. v. Reed Publishing (USA), Inc.,* Nos. 93 Civ. 3428, 73163, 1994 WL 191643, *4–6 (S.D.N.Y. May 17, 1994) (Keenan, J.) (same). Unlike contributory liability, vicarious liability may exist even if the third party was in no way directly involved in the actual copying. *See Shapiro,* 316 F.2d at 307; *Peer Int'l Corp.,* 887 F.Supp. at 565. Thus, there are only two elements of vicarious liability: (1) the ability to control the infringer and (2) a financial interest in the infringing activities.

■■■ In addition to the doctrines of contributory infringement and vicarious liability, the plaintiff alleges that the co-defendants are liable for Hit–Tix's allegedly infringing activities under the doctrine of alter ego liability. One entity is considered the "alter ego" of a corporation when the entity uses the corporation to achieve fraud, or when the entity so dominates the corporation and completely disregards the corporation's separate identity that the entity primarily transacts its own business rather than that of the corporation. *See Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir.1995); *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979). Determining whether an alter ego relationship exists is a fact-specific inquiry that varies depending upon the totality of circumstances. *Thomson–CSF,* 64 F.3d at 777–78; *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Relevant factors to consider include whether the entities share a common office and staff, are run by common officers, intermingle funds, fail to deal at arms length with each other, and are not treated as separate profit centers. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 139 (2d Cir.1991) (listing factors); *American Protein,*

844 F.2d at 60 (noting that factors to consider include lack of normal corporate formality, under-capitalization, and personal use of subsidiary's funds by the parent or owner); *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir.1984) (listing factors to consider).

EKTM, PMPI, Krebs, and Morer argue that they cannot be held liable as third-party infringers under any of the theories the plaintiff espouses and that as a matter of law they therefore cannot be held liable for Hit–Tix's allegedly infringing activities. Although the co-defendants' papers do not clearly distinguish among these various theories of liability, it appears that the co-defendants believe that they are not vicariously liable because they had neither control over Hit–Tix nor a financial interest in its alleged infringing activities; that they are not contributorily liable because they did not participate in the alleged infringement in any way; and that they are not alter egos of Hit–Tix because they are each separate and independent entities.

Disputed issues of material fact prevent a determination that as a matter of law the co-defendants cannot be held liable for Hit–Tix's alleged infringement of the plaintiff's copyright under any of the theories of liability the plaintiff has suggested. *See Thrift Drug v. Prescription Plan Serv. Corp.,* No. 93 Civ. 4460, 1995 WL 408205, *2 (S.D.N.Y. July 11, 1995) (Knapp, J.) (denying summary judgment on issue of alter ego liability); *R & R Recreation Products,* 1992 WL 88171, at *3–4 (finding disputed issues of material fact precluded summary judgment on issue of contributory copyright infringement); *Nationwide Educ. Dev. Corp. v. Rex Communications, Inc.,* No. 88 Civ. 4957, 1990 WL 64595, at *4–5 (S.D.N.Y. May 3, 1990) (Keenan, J.) (denying summary judgment on the issue of third-party liability).

■■■ First, all four of the co-defendants may be vicariously liable as third-party infringers because the plaintiff has presented evidence that each of them had some control over Hit–Tix as well as a financial interest in the alleged acts of infringement. The plaintiff asserts that both Krebs and Morer,

through their respective corporations EKTM and PMPI and through their own personal actions, supervised and controlled Hit–Tix and its infringement of the Ez–Tixz copyright. The plaintiff alleges that Krebs had, through EKTM, a 50 percent interest in the defendant Hit–Tix, and Morer had, through PMPI, a 25 percent interest in Hit–Tix, and that Krebs and Morer, through their respective corporations EKTM and PMPI, were two of the three members of a committee that made most of Hit–Tix's decisions. In addition to having control of Hit–Tix, the corporate defendants, and derivatively Krebs and Morer, were major shareholders of Hit–Tix, and therefore had a financial interest in any benefits Hit–Tix derived from the alleged infringement. The evidence proffered by the plaintiff indicates that each of the co-defendants has some degree of control over the alleged infringing activities as well as a financial interest in the infringement. Summary judgment is therefore inappropriate on the issue of vicarious liability.

■ Summary judgment on the plaintiff's contributory infringement claim is also inappropriate. Contributory liability requires a showing of (1) actual or constructive knowledge and (2) participation. Here, the co-defendants' actual or constructive knowledge of Hit–Tix's alleged infringing activities as well as the co-defendants' participation in that infringement are factual issues in considerable dispute between the parties. The plaintiff points to many factors to support its allegation that each of the co-defendants both had knowledge of the alleged infringing activities and personally participated in the infringement. There is evidence that Krebs, through EKTM, approved all decisions made by Hit–Tix except those involving routine matters and that Krebs was personally aware that Hit–Tix was infringing the EZ–TIXZ copyright. In addition, there is evidence that the computer program at issue in this case was also maintained on a computer in EKTM's office and, when advantageous, the Program was run on EKTM's computer. As for Morer and PMPI, the plaintiff has presented evidence that Morer signed the 1992 agreement as CEO for Hit–Tix and through PMPI made the decision as part of Hit–Tix's governing committee not to pay Ez–Tixz a

licensing fee for the Program. As Judge Weinfeld stated in *Wales Indus. Inc. v. Hasbro Bradley, Inc.,* 612 F.Supp. 510 (S.D.N.Y. 1985), "[w]hether these defendants had actual or constructive knowledge of the alleged infringement and whether they played a sufficient role in furthering it are fact issues that may not be resolved upon this motion." *Id.* at 518; *see also Shapiro, Bernstein & Co. v. Gabor,* 266 F.Supp. 613 (S.D.N.Y.1966) ("[W]hether [a corporate officer] did personally participate [in the alleged infringing activities] can only be determined after resolution of that issue of fact upon a trial.").

■ Significant issues of material fact also prevent a determination whether the co-defendants are alter egos of Hit–Tix. Co-defendants argue that EKTM, PMPI, and Hit–Tix are separate and independent corporations, and the general rule is that the separate identities of corporations should be recognized and upheld unless specific unusual circumstances permit an exception. *See William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600 (2d Cir.1989); *American Protein,* 844 F.2d at 60 (noting that there is "a presumption of separateness between a corporation and its owners"). The co-defendants allege that the plaintiff has not proffered sufficient evidence to justify piercing the corporate veil.

The plaintiff has raised serious factual issues concerning the relationship between the co-defendants and Hit–Tix that must await trial for resolution. The plaintiff has proffered evidence that Morer and Krebs, through their respective corporations PMPI and EKTM, owned a significant amount of Hit–Tix's stock, were officers of Hit–Tix, controlled corporate decisions, and used corporate funds (through corporate credit cards) for their own use and that of their corporations. Although the plaintiff may not be able to prevail eventually at trial on this theory, the plaintiff has presented sufficient evidence to avoid judgment against it on this theory at this time.

Accordingly, because there are disputed issues of material fact concerning the co-defendants' liability for Hit–Tix's allegedly infringing activities, the co-defendants' sum-

mary judgment motion to dismiss the plaintiff's claims against them is denied.

### III.

■ All of the defendants argue that the plaintiff's claim for attorney's fees and statutory damages for copyright infringement must be dismissed as a matter of law pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, this motion is granted.

A court should dismiss a cause of action under Fed.R.Civ.P. p. 12(b)(6) only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.'" *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

The Copyright Act provides that a prevailing plaintiff is entitled to either (1) actual damages sustained by the plaintiff and the defendant's profits from its infringement; or (2) statutory damages pursuant to 17 U.S.C. § 504(c). The defendants claim that even if the plaintiff is successful, it is not entitled to elect statutory damages because the alleged infringement took place before the copyright was registered.[1] The plaintiff responds that summary judgment is not appropriate on this issue because there are disputed material issues of fact concerning whether the alleged infringement occurred, and if it did occur, when it occurred. In addition, the plaintiff contends that any decision on the availability of statutory damages is premature because the plaintiff does not have to make an election between statutory damages and actual damages until the Court renders final judgment.

Under 17 U.S.C. § 504(c)(1), a copyright owner may elect to recover statutory damages instead of actual damages and profits. A plaintiff is not entitled to elect statutory damages or to receive attorney's fees, however, if

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412; *see Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1012 (2d Cir.1995) (applying 17 U.S.C. § 412 to claim for attorney's fees). Because the work at issue in this case, the Program, is not published, only 17 U.S.C. § 412(1) is applicable.[2] The plaintiff alleges that the defendants began infringing its copyright in October 1990, when the Program was allegedly completed and the defendants continued to use it without a licensing agreement. The Program was not registered with the Copyright Office, however, until March 5, 1993. As the plaintiff correctly acknowledged at oral argument, it is not entitled to recover statutory damages or attorney's fees for those alleged acts of infringement that occurred prior to the registration of the copyright in March 1993. Accordingly, what is at issue is solely whether the plaintiff will be entitled to elect statutory damages and to receive attorney's fees for those alleged acts of infringement that

---

1. The defendants also appear to allege that the plaintiff's copyright registration is voidable because the plaintiff has committed fraud on the copyright office. Because the defendants have not made a motion to dismiss the plaintiff's infringement claims, the defendants apparently make this fraud argument as part of their motion to dismiss the plaintiff's claim for statutory damages and attorney's fees. It is not necessary to determine whether the copyright registration is void because the defendants' motion to dismiss the plaintiff's claim for statutory damages and attorney's fees is granted on other grounds. In any case, this allegation of fraud necessarily involves disputed issues of material fact that must await trial for resolution.

2. "Publication" is defined in the Copyright Act as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101. The Program was registered as a unpublished work. (Amd.Compl., Exh. A (copyright registration).) The result under the statute would be the same whether the Program was published or not.

occurred after March 1993 if it is successful in this action.

■ At oral argument the plaintiff argued that it is entitled to elect statutory damages for acts of infringement occurring after March 1993 because each sale of a ticket was a separate act of infringement that "commenced" after the registration of the copyright. This argument is without merit. Under section 412, infringement "commences" when the first act of infringement in a series of on-going discrete infringements occurs. *Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 535–36 (E.D.N.Y. 1988), *aff'd*, 923 F.2d 845 (2d Cir.1990); *accord Mason v. Montgomery Data, Inc.*, 741 F.Supp. 1282, 1286 (S.D.Tex.1990), *rev'd on other grounds*, 967 F.2d 135 (5th Cir.1992); *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F.Supp. 1378, 1393–95 (C.D.Cal.1993) (interpreting section 412(2)); *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 609 F.Supp. 1325, 1331 (E.D.Pa.1985), *aff'd*, 797 F.2d 1222 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987). The alleged acts of infringement that occurred after the copyright was registered do not constitute new acts of infringement but a continuation of the infringement that "commenced" prior to registration. *Singh*, 680 F.Supp. at 535–36.

The acts of infringement alleged in this case are not distinct but on-going. In its own pleadings the plaintiff alleges that the defendant infringed its copyright in the Program from October 1990 to the present every time Hit–Tix used the Program to issue a ticket. The infringement that allegedly occurred prior to March 1993 is therefore the same infringement that commenced in October 1990 and that has allegedly continued.

Factual issues do not preclude a determination that the plaintiff is ineligible for statutory damages and attorney's fees. The plaintiff's own complaint alleges that the infringement began in October 1990. The issue in dispute between the parties is not when the infringement started but whether there was any infringement at all. If the defendants are found liable for infringement at trial, this infringement began prior to March 1993. In addition, a decision on the availability of statutory remedies is not premature because the plaintiff's pleadings contain a request for an award of statutory damages as well as attorney's fees. (Complaint, Prayer for Relief ¶ 1.)

Accordingly, even if there is ultimately a finding that the defendants infringed the plaintiff's copyright, the plaintiff would not be entitled to elect statutory damages or to receive attorney's fees. *See, e.g., Knitwaves*, 71 F.3d at 1012 (denying attorney's fees for work in connection with one copyright infringement claim where the registration for that copyright occurred after infringing activities; noting that 17 U.S.C. § 412 would also preclude statutory damages); *Secunda v. Time Warner Cable of New York City*, No. 95 Civ. 0671, 1995 WL 675464, at *2 (S.D.N.Y. Nov. 14, 1995) (Scheindlin, J.) (granting motion to dismiss plaintiff's claim for statutory damages and attorney's fees because alleged infringing conduct occurred prior to date of registration); *Cognotec Servs. Ltd. v. Morgan Guaranty Trust Co. of New York*, 862 F.Supp. 45, 52 (S.D.N.Y.1994) (Duffy, J.) (granting defendant's motion to strike plaintiff's request for statutory damages and attorney's fees because plaintiff had alleged that infringement occurred prior to date of copyright registration). The defendants' motion to dismiss the plaintiff's claim for statutory damages and attorney's fees is therefore granted, and the plaintiff's request for statutory damages and attorney's fees is stricken.

## IV.

Finally, the defendants move to dismiss the plaintiff's state law claims for misappropriation of trade secrets and unfair competition alleged in the fourth and fifth causes of action of the Complaint, respectively. The defendants argue that these claims are preempted by federal law. The plaintiff denies that these claims are preempted.

The Copyright Act expressly provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright

as specified by sections 102 and 103 ... are governed exclusively by [the Copyright Act]." 17 U.S.C. § 301(a). This preemption of state law is limited by section 301(b), which provides that "[n]othing in the title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106...." 17 U.S.C. § 301(b)(3). The Copyright Act grants copyright holders the exclusive right "(1) to reproduce the copyrighted work ...; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) ... to perform the copyrighted work publicly; and (5) ... to display the copyrighted work publicly." 17 U.S.C. § 106.

■ A state-law cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive right protected by federal copyright law. *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). There is no preemption if " '[a]n extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action.... A state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.' " *Id.* (quoting *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992)) (internal quotations omitted). As the Court of Appeals for the Second Circuit explained in *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693 (2d Cir.1992):

Following this "extra element" test, we have held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301.

. . . . .

However, many state law rights that can arise in connection with instances of copyright infringement satisfy the extra element test, and thus are not preempted by section 301. These include unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets.

*Id.* at 717.

The plaintiff initially argues that the fourth and fifth causes of action are not preempted because they seek to protect noncopyrightable trade secrets.[3]

■ The plaintiff is correct that the fourth cause of action states a claim for trade secret misappropriation. To state a claim for trade secret misappropriation, the plaintiff must allege "(1) it possessed a trade secret; and (2) [defendants are] using that trade secret in breach of an agreement, confidence, or duty, or as the result of discovery by improper means." *Integrated Cash Management Servs. v. Digital Transactions, Inc.,* 920 F.2d 171, 173 (2d Cir.1990); *see Geritrex Corp. v. Dermarite Indus., LLC,* 910 F.Supp. 955, 961 (S.D.N.Y.1996) (Conner, J.) (citing *Integrated Cash Management* ). The fourth cause of action alleges that "the Defendants have engaged in discussions or negotiations with third parties that will expose or reveal, and may have offered to sell or sold, trade secrets embodied in the Program." (Amd. Compl. ¶ 50.) In addition, the fourth cause of action alleges that the defendants had access to these trade secrets and "knew and agreed that the confidential proprietary matter was to be safeguarded and preserved as trade secrets of Plaintiff." (Amd.Compl. ¶ 49.) The claim requests "an injunction re-

**3.** Under New York law, a trade secret " 'may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.' " *Integrated Cash Management,* 920 F.2d at 173 (quoting Restatement of Torts § 757, cmt. b.). The trade secret doctrine is "a necessary and integral part of intellectual property protection extended to computer programs" which serves to protect ideas, processes, and systems that are not necessarily covered by copyright law. *Computer Assocs.,* 982 F.2d at 717.

straining Defendants ... from possession, transfer or use of the Program which embodies Plaintiff's trade secrets and all other trade secret matter of Plaintiffs [sic] in Defendants' possession." (Amd.Compl.¶ 52.)

A state law claim for trade secret misappropriation may satisfy the "extra element test" if it alleges an additional element such as the breach of trust or confidentiality by the improper disclosure of confidential information. *Computer Assocs.*, 982 F.2d at 717. Here, the plaintiff not only alleges that the defendants displayed, publicized, and distributed its copyrighted Program, but that they did so in violation of an agreement to keep the trade secrets contained in the Program confidential. Because the plaintiff's claim for trade secret misappropriation requires proof of a breach of confidence, it is not preempted by federal law. *Id.*

 The Amended Complaint does not, however, support the plaintiff's argument that the fifth cause of action for unfair competition also is based on noncopyrightable trade secrets. In the beginning of the Amended Complaint, the plaintiff defines its computer program for ticket sales automation as "the Program." (Amd.Compl. ¶ 8.) The fifth cause of action specifically refers to "the Program" in every paragraph contained under the heading for this cause of action, (Amd.Compl. ¶¶ 53–58), and states that the "Defendants' refusal to license or return the Program ... is an intentional act of unfair competition," (Amd.Compl. ¶ 58). There is absolutely no indication that the fifth cause of action concerns anything other than the continued use of the Program by the defendants; indeed, the words "trade secret" are not contained anywhere in the fifth cause of action.

Because the fifth cause of action does not refer to noncopyrightable trade secrets but rather to the Program, which is indisputably subject to copyright protection, the remaining issue in connection with this claim is whether it avoids preemption by satisfying the "extra element" test.

The plaintiff's claim for unfair competition is preempted by federal copyright law because the right asserted is identical to the rights exclusively protected by federal law.

A claim for unfair competition under New York common law is preempted by federal copyright law because New York law "requires proof of no element in excess of those elements to establish a copyright-infringement action." *Kregos*, 3 F.3d at 666; *see also Computer Assocs.*, 982 F.2d at 716 (unfair competition claim based solely on copying of plaintiff's copyrighted work is preempted). The plaintiff has failed to demonstrate that its unfair competition claim contains an "extra element" to distinguish it from a federal copyright claim. The gist of the fifth cause of action is simply that the defendants continued to use the program without paying a licensing fee. Accordingly, the plaintiff's claim for unfair competition must be dismissed because it is preempted.

### CONCLUSION

For the reasons given above, the co-defendants' motion for summary judgment dismissing all claims against them is DENIED; the defendants' motion to dismiss the plaintiff's claim for statutory damages and attorney's fees is GRANTED; the defendants' motion to dismiss the fourth cause of action of the Amended Complaint is DENIED; the defendants' motion to dismiss the fifth cause of action of the Amended Complaint is GRANTED.

**SO ORDERED.**