**Frank FOURNIER, Plaintiff,**

v.

**McCann ERICKSON and Microsoft Corporation, Defendants.**

**No. 00 Civ.8636(VM).**

United States District Court, S.D. New York.

May 30, 2002.

Stephen A. Weingrad, Weingrad & Weingrad, L.L.P., New York, NY, for Frank Fournier.

Richard Dannay, Cowan Liebowitz & Latman, P.C., New York, NY, for McCann Erickson, Microsoft Corp.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Frank Fournier ("Fournier") commenced the present action alleging copyright infringement of his photograph titled "Young Dynamic Stock Broker from the Rear" and related state law causes of action. Defendants McCann Erickson ("McCann") and the Microsoft Corporation ("Microsoft") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, primarily on the grounds that there exists no substantial similarity between Fournier's photograph and the allegedly infringing one. For the reasons set forth below, defendants motion for summary judgment is granted in part and denied in part.

### I. BACKGROUND

In 1999, Microsoft retained the services of McCann, an advertising agency, to launch an advertising campaign for Microsoft's Windows 2000 product line. In what appear to have been the initial consultations between Microsoft and McCann, or perhaps at McCann's own initiative, the underlying concept behind the campaign was conceived before Fournier even appeared on the scene. McCann asserts, and Fournier does not dispute, that McCann sought to highlight the theme of innovation in the Windows 2000 product. In that regard, McCann coined a slogan which eventually became the one implemented by Microsoft: "The old rules of

business no longer apply."[1]

It also appears that in connection with its own ideas about the advertising campaign, McCann had in mind the kind of photograph that it wanted to implement into the print advertisements of the Windows 2000 campaign. In keeping with the notion that "the old rules of business no longer apply," McCann conceived of the idea of using an image, from a rear perspective, of a casually dressed man walking to work among traditionally dressed businessmen.

The Vice–President of McCann, Philip Pavliger ("Pavliger"), contacted Chameleon Photos, Inc. ("Chameleon"), a New York corporation engaged in the business of supplying photographs and photographers for commercial projects. At first, Pavliger inquired about purchasing the rights to use a "stock" photograph, that is, an existing picture, for use in the Windows 2000 campaign.[2] Chameleon provided some stock photographs, but did not believe that there was a suitable option among its inventory.

At the time, Chameleon was acting as an agent for Fournier and introduced him to McCann for the purposes of setting up a "speculative assignment." The speculative assignment was a formal contract between the parties which contemplated that Fournier would take photographs based on the McCann concept.[3] If McCann believed that Fournier's work could be implemented into the Windows 2000 campaign, the parties contemplated separate negotiations for fee and usage rights. In the event that no agreement was reached or the photo-

graphs were unsuitable for the campaign, McCann agreed to pay Fournier's expenses.

The events leading up to the speculative assignment are largely undisputed. Going forward, however, the parties begin to differ slightly, but significantly, in their recollections of the events. As noted above, by the time it engaged the services of Fournier, McCann had already established the basic concept behind the Windows 2000 campaign and had in mind the kind of photograph it wanted to use in the print advertisements. Therefore, McCann hired Fournier for the purpose of creating a specific photograph in accordance with McCann's instructions. Exactly what those instructions were, however, is important to the dispute hand, which revolves around Fournier's claim of copyright over his *original* work.

From the parties' submissions, there is no material dispute that McCann conveyed to Fournier not only the basic concept of the campaign, but also certain specific elements that the photograph should contain. For instance, McCann provided a "comp" to both Chameleon and Fournier, which was attached to the speculative assignment.[4] A comp is an exemplar, a rough photograph conveying the basic concept behind the speculative assignment. The comp given to Fournier clearly shows a casually dressed man carrying a bag, from a rear perspective, in an urban setting. McCann also advised Fournier that the casually dressed man should be surrounded by commuters in traditional business dress.[5] McCann further alleges that it

1. (Defendants' Statement Pursuant to Rule 56.1, dated Oct. 2, 2001 ("Rule 56.1"), at ¶ 5. Declaration of Philip Pavliger, sworn to Oct. 1, 2001 ("Pavliger Decl."), at ¶ 2.)

2. (Rule 56.1, at ¶ 6.)

3. (Rule 56.1, at ¶¶ 7–8. The estimate for the speculative assignment is attached as Exhibit 2 to Plaintiff's Exhibits, Vol. 1.)

4. (Rule 56.1, Ex. A.)

5. (Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment,

even specified some of the clothing and accessories for the casually dressed commuter: shorts, sandals and a briefcase.[6] Fournier concedes in his deposition that Pavliger instructed him that the central figure should wear a red shirt, something along the lines of a red Hawaiian shirt.[7]

Although the exact instructions given to him remain unclear, Fournier set out to shoot a photograph with the underlying concept and whatever parameters McCann had conveyed to him. It also appears undisputed that Fournier chose the site of the shoot, the arrangement of the models, the general layout and other specific aspects which were not pre-determined before the actual shoot.

The end result of Fournier's shoot was over 200 photographs of a casually dressed man among other commuters in traditional business garb, likely on their way to work in an urban setting. McCann contends that the exact photograph that it wanted was not among Fournier's photographs, but that a composite pieced together from several of them could be workable.[8] Fournier and McCann then entered into negotiations for a license to use the photographs, which ultimately ended without agreement between the parties. According to McCann, Fournier's opening offer was in excess of nine times the amount McCann believed to be a reasonable and customary usage fee.[9] Although the price eventually came down, the corresponding limitations in the scope of the usage rights compelled McCann to reject Fournier's offer. McCann paid Fournier's expenses as set

forth in the speculative assignment, and the two parted ways.

McCann then retained the services of a freelance photographer in San Francisco to create the desired picture. Ultimately, McCann chose to implement one of the photographs from this subsequent shoot into the Windows 2000 campaign. In January 2000, the Microsoft advertisements featuring this photograph began to appear. The parties agree that the advertisement ceased running in periodicals around May 2000.[10] Fournier, however, did not register his copyright with the United States Copyright Office until March 13, 2000.[11] Nevertheless, based on the allegedly substantial similarities between Fournier's photograph and the one which appeared in the Windows 2000 advertisement, Fournier commenced the present action asserting claims of copyright infringement, unfair competition and tortious misappropriation of goodwill.

## II. *STANDARD OF REVIEW*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v.*

---

dated Dec. 10, 2001 ("Defendant's Reply"), at 3.)

6.  (*Id.*)

7.  (Deposition of Frank Fournier, dated May 25, 2001 ("Fournier Dep."), at 62, 64. Defendants' Memorandum of Law in Support of Motion of Summary Judgment, dated Oct. 2, 2001 ("Defendants' Mem."), at 17.)

8.  (Pavliger Decl., at ¶ 9.)

9.  (*Id.,* at ¶ 12.)

10.  (Pavliger Decl., at ¶ 18.)

11.  (Compl.¶ 11.)

*Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). Courts must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Gallo,* 22 F.3d at 1223. In the final analysis, summary judgment is improper if there is any evidence in the record supporting a genuine issue as to any material fact. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## III. *DISCUSSION*

### A. *COPYRIGHT INFRINGEMENT*

Fournier's first claim asserts copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* In essence, Fournier alleges that defendants copied, without authorization, the concept and artistic elements of his photograph titled "Young Dynamic Stock Broker from the Rear," for which he holds a valid copyright. According to Fournier, defendants then published their copy in advertisements for their own economic benefit and to Fournier's detriment. Drawing all reasonable inferences and resolving all doubts in favor of Fournier, as it must, the Court finds that there are genuine issues of material fact that preclude summary judgment as to Fournier's claim of copyright infringement.

■ To establish a claim of copyright infringement, Fournier must prove that (1) he owned a valid copyright; and (2) defendants copied constituent elements of Fournier's work that are original. *See Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Boisson v. Banian, Ltd.,* 273 F.3d 262, 267 (2d Cir. 2001). The first element is undisputed. In his complaint, Fournier attached a copy of his Certificate of Registration with the United States Copyright Office for the photograph at issue, and defendants have not disputed the validity of that copyright for purposes of the present motion. In any event, a copyright registration certificate is prima facie evidence of the validity of the copyright. *See Boisson,* 273 F.3d at 267. Although the presumption of validity that accompanies a certificate of registration may be rebutted, defendants have not contested Fournier's copyright. *See id.*

■ The second element of unlawful copying requires a more nuanced analysis, that involves two separate inquiries. *Id.* First, Fournier must demonstrate that defendants "actually copied" his photograph. *Id.* (citing *Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 747 (2d Cir.1998)). Proof of actual copying may be established by direct or indirect evidence. Fournier has not presented direct evidence of copying and therefore must support a finding of actual copying with indirect evidence. *See Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 140 (2d Cir.1992). Indirect evidence may include " 'access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony.' " *Boisson,* 273 F.3d at 267 (quoting *Laureyssens,* 964 F.2d at 140).

■ Second, a showing of unlawful copying requires Fournier to establish a substantial similarity between the allegedly infringing work and the *protectible* elements of his photograph. *See Boisson,* 273 F.3d at 268 (citations omitted). Courts have noted that the analysis of substantial similarity in protectible elements is an elusive one, often reduced to "an inexact science." *Kaplan v. The Stock Market Photo Agency, Inc.,* 133 F.Supp.2d 317, 322 (S.D.N.Y.2001) (citations and quotations omitted). Therefore, courts have relied on several corollary principles to

inform the inquiry of substantial similarity. As a threshold matter, it is well-settled that the protection of the copyright laws extends only to the *original expression* of a concept, and not to the concept itself. *See Boisson,* 273 F.3d at 268. Although the distinction between the concept and the expression of a concept is a difficult one, expression may be defined by its characteristics or components. *See id.* As the court in *Boisson* noted, the heart of this inquiry focuses on originality: "Inasmuch as protection extends only to those components of a work that are original to the author, originality is the '*sine qua non* of copyright.'" *Id.* (citing *Feist Publications,* 499 U.S. at 348, 111 S.Ct. 1282).

There remains, then, the question of which characteristics or components of a photograph may considered original and protectible. Defendants contend, and the Court is inclined to agree, that those elements of Fournier's photograph which McCann specifically instructed him to include cannot be "original" within the meaning of the copyright laws. If those characteristics originated from McCann's conception of the advertising campaign generally, then Fournier cannot claim original ownership to those aspects of his photograph. Defendants also point out that the doctrine of *scenes a faire* precludes Fournier from claiming originality of incidents, characters, settings and sequences of events that flow naturally and necessarily from the choice of a given concept. *See Kaplan,* 133 F.Supp.2d at 322–23. Thus, defendants conclude that Fournier cannot assert copyright protection, to the extent that he does, over the expression of businessmen in traditional dress on their way to work, an idea which originated with McCann in any event.

While the protectible components of a photograph may be limited by the principles set forth above, there remain a number of original artistic elements that courts have recognized. Originality in a photograph may be manifested in the "posing of subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) (citations omitted). All of these elements contribute to the "total concept and feel" of the photograph which by itself may support the originality of the work in question. *Knitwaves, Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1003 (2d Cir. 1995) (citations omitted); *Branch v. Ogilvy & Mather, Inc.,* 765 F.Supp. 819, 823 (S.D.N.Y.1990).

Keeping all of these variables in mind, courts are reminded that the determination of substantial similarity is generally made by application of the ordinary observer test: "whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Knitwaves,* 71 F.3d at 1002 (citations omitted).[12]

■ Applying these principles here, the Court concludes that genuine issues of material fact preclude summary judgment on Fournier's claim of copyright infringement. First, Fournier has marshaled enough indirect evidence to raise an issue of unlawful copying. In fact, the very nature of the speculative assignment be-

---

**12.** The parties are in agreement that the ordinary observer test, and not the more rigorous "discerning observer test" applies in this case. (Defendant's Mem., at 8; Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion for Judgment, dated Nov. 22, 2001 ("Plaintiff's Mem."), at 7.) Although the tests substantially overlap in their analyses, the discerning observer test is usually reserved for those situations where the plaintiff alleging infringement has himself or herself borrowed artistic elements already in the public domain. *See Boisson,* 273 F.3d at 272.

tween the parties contemplated presentation by Fournier of his work to McCann and, thereby, established defendants' access to Fournier's work at least at that phase of the project.

As to the substantial similarities between the two photographs, Fournier has presented a viable, though short of compelling, case which leaves unanswered several issues of material fact. Applying the ordinary observer test, the Court finds that, as a threshold matter, the total concept and feel of Fournier's photograph and the allegedly infringing one are unmistakably similar.[13] Both photographs employ a background which is bordered on the sides by structures with imposing columns on one side and office buildings on the other. Although the "typical" urban setting may be expressed in various backgrounds, both photographs choose this particular one.

The posing of the models and their accoutrements are also unmistakably similar. Fournier's particular expression of the casually dressed man takes the form of a commuter dressed in a reddish-orange polo shirt with border stripes on the sleeves and collar. The photograph ultimately used in the Windows 2000 advertisement shows a young man in a slightly brighter orange polo shirt with marginally different stripe patterns. In both photographs, the casually dressed men are carrying similar leather bags, which are variants of the traditional briefcase. Both photographs also show the casually dressed men tightly flanked, although in varying degrees, by business men in traditional suits. A balding, traditionally dressed business man appears in both pic-

tures directly to the right of the casually dressed model.

The angles, although not identical, are also similar. The casually dressed commuter is the central figure in both works, occupying the position closest to the photographer. The other models are situated slightly ahead of the central figure in both pictures. In short, the total concept and feel and certain specific attributes have substantial similarities that raise an inference, in the absence of direct evidence, of copying of constituent elements in this case.

Defendants vigorously contend, and the Court concedes, that there are also some notable differences between the two works. While the total concept and feel may be similar, the senses evoked by the two images differ slightly. Fournier's photograph has an open, unobstructed feel by virtue of the visible spaces ahead and above the cluster of commuters. In contrast, the McCann photograph appears more enclosed, as the models are situated closer together in the cluster, and the open spaces are limited. The difference in feel may be furthered by the large, broad concrete slabs which form the pedestrian walkway in Fournier's picture, in contrast to the small tiles on the ground in McCann's. Fournier's photograph shows a woman, in arguably traditional business garb, to the left of the casually dressed man. McCann's photo displays three other traditionally dressed men, perhaps in an attempt to emphasize the nonconformity of the central figure. There are also slight differences in the accessories adorning the models.

---

13. Both photographs are attached as Exhibit 19 to Plaintiff's Exhibits, Vol. 1. There is some dispute as to which version of Fournier's photograph should come before the Court. Defendants contend that the photograph at-tached as part of Exhibit 19 is cropped at the top to unfairly emphasize similarities in the two works. (Defendant's Reply, at 5.) The Court has considered all of the submissions with the specific disagreements in mind.

The critical issue, however, is whether these differences cited by defendants so substantially outweigh the similarities that there exists no genuine issue of fact as to unlawful copying. *Knitwaves*, 71 F.3d at 1004 ("These differences in detail, while requiring considerable ink to describe, do little to lessen a viewer's overwhelming impression that the two Lollytogs sweaters are appropriations of the Knitwave sweaters."). Without question, there are situations when clear similarities between two works will be outweighed by more compelling differences. Defendants appropriately cite *Kaplan v. The Stock Market Photo Agency, Inc.*, 133 F.Supp.2d 317 (S.D.N.Y. 2001), for this proposition. Having examined the photographs at issue in *Kaplan*, however, the Court finds that, in contrast to the works at issue here, the differences presented there much more convincingly outweighed any similarities. The photographs in Kaplan differed materially in perspective, feel and background. *See id.* at 323–26. And nearly all of the elements alleged to be similar in *Kaplan* flowed naturally from the very specific concept at issue—that is, a businessman contemplating a suicidal leap from the ledge of the building. *See id.* at 324. In contrast, the more general concept in play here is subject to a number of other creative interpretations which do not sufficiently explain all of the similarities in the two photographs.

In short, the similarities and differences between the two works in the present dispute are more evenly balanced than they were in *Kaplan*. As noted above, the Court did not find the similarities to be overwhelming, but rather sufficiently meaningful to raise a genuine issue as to unlawful copying. The analysis of substantial similarity is also complicated by the specific facts in this case. In particular, it is clear that McCann gave Fournier not only the underlying concept behind the picture, but also some specific elements

that the photograph should reflect. Nevertheless, it is also clear that Fournier exercised some discretion as to artistic elements such as background, positioning and clothing. Some, but not all of these originally conceived expressions may not flow naturally from the concept dictated by McCann, and Fournier should be permitted an opportunity to prove his claim of copyright infringement on the merits. For these reasons, defendants' motion for summary judgment as to Fournier's claim of copyright infringement is denied.

## B. *STATUTORY DAMAGES*

■ Although the Court sustains his first claim of copyright infringement, Fournier's claim for statutory damages pursuant to the Copyright Act is untenable. Section 504(c)(1) of the Act permits a copyright owner to elect statutory damages instead of actual damages and profits. *See* 17 U.S.C. § 504(c)(1). This entitlement, however, is unavailable under either of two scenarios:

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. Fournier concedes that his photograph was not published, and therefore, only § 412(1) applies here.

The text of § 412(1) is unambiguous. If *any* alleged infringement of an unpublished work occurs before registration, statutory damages are unavailable. *Id.* (emphasis supplied). Fournier attempts to circumvent the plain language of § 412(1) by arguing that each appearance of the allegedly infringing photograph in a maga-

zine advertisement constitutes an independent act of infringement and that after March 13, 2000—the effective date of Fournier's registration certificate—the McCann photograph appeared in 34 separate such advertisements.[14]

The Court finds no sound basis for taking this fragmented approach to the alleged infringement here. In *Ez–Tixz, Inc. v. Hit–Tix, Inc.*, 919 F.Supp. 728, 736 (S.D.N.Y.1996), the court confronted a similar argument from plaintiff that each instance of use constitutes a distinct infringement. In *Hit–Tix*, the copyright at issue related to computer software that manages theater ticket sales. *See id.* at 731. Plaintiff claimed that each time defendants used the software to generate a theater ticket sale after the date of copyright registration was a separate act of infringement. *See id.* at 736. The court rejected the argument, finding that infringement was a continuous, unified event that "commences when the first act [ ] in a series of on-going discrete infringements occurs." *Id.*

Similarly, the alleged infringement at issue here concerns the use of a photograph in a single, unified advertising campaign. Thus, to the extent that any alleged infringement occurred here, it commenced in January 2000, when the photograph first appeared in advertisements. Each subsequent appearance of the photograph was part of the continuous, ongoing advertising campaign. Because the alleged infringement commenced before the effective date of his registration, Fournier is not entitled to statutory damages or attorney's fees. *See Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir.1998) ("Every court to consider

this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.") (citing cases); *Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 536 (E.D.N.Y.1988) (noting that both the plain text and the legislative history of section 412 support the conclusion that "the manufacture and sale in 1983 of the works in this case 'commenced' an 'infringement' within the meaning of section 412, and that, since plaintiffs did not register the works until July 1984, they may not recover statutory damages or attorney's fees.").

Should Fournier successfully prove a claim of copyright infringement, his recovery shall be limited to actual damages. For these reasons, defendants' motion for summary judgment on Fournier's claim for statutory damages and attorney's fees is granted.

## C. *UNFAIR COMPETITION AND TORTIOUS MISAPPROPRIATION OF GOODWILL*

■ Fournier's second and third claims allege unfair competition and tortious misappropriation of goodwill.[15] Defendants contend that these claims are preempted by the federal copyright laws. The Court agrees, and defendants' motion for summary judgment as to these claims is granted.

The preemption of state law causes of action relating to federal copyright claims is explicitly addressed in 17 U.S.C. § 301(a) and (b). Section 301(a) provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as

---

**14.** (Plaintiff's Opposition, at 24.)

**15.** Fournier mistakenly designates his claim for tortious misappropriation of goodwill as

"Count V" of the Complaint, which the Court simply refers to as his third claim.

specified by section 106 ... are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." Section 301(b)(3), however, limits preemption with the proviso that "[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."

Reading § 301(a) and (b) together, courts in this Circuit have held that a "state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos v. The Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) (citations omitted); *see also Hit–Tix,* 919 F.Supp. at 737. A state law claim is not preempted if it requires an "extra element," instead of or in addition to the acts of reproduction, performance, distribution or display, in order to establish that claim. *Hit–Tix,* 919 F.Supp. at 737. That extra element must change the nature of the claim such that it makes that claim qualitatively different from copyright infringement. *See id.*

In the present case, all of Fournier's claims are grounded solely on the allegation of unauthorized copying and subsequent use of his purportedly protected photograph. Grounded as such, neither of the two common law claims contain or allege an extra element that distinguish them from the copyright infringement claim.

In his opposition papers, Fournier for the first time claims that he has alleged an extra element of "the specific act of solicitation, offer and acceptance, the contract between McCann and Fournier." [16] Fournier's argument misses the point entirely. First, solicitation, offer and acceptance are not extra elements in unfair competition or tortious misappropriation claims. As stated in the opposition papers, they may be elements of a thoroughly ambiguous claim for breach of contract, but in connection with Fournier's second and third claims, they are merely unrelated, additional allegations that are not asserted in the complaint. These vague contentions do not qualitatively alter any of the claims which are all grounded in the alleged infringement of a copyrighted photograph. For these reasons, Fournier's second and third claims for unfair competition and tortious misappropriation of goodwill are preempted by the federal copyright laws, and defendants' motion for summary judgment is granted as to these claims. *See Kregos,* 3 F.3d at 666 ("The district court was correct to locate Kregos's unfair-competition claim in the former, preempted category; as Kregos has formulated his pleadings, the claim contains no element to qualitatively differentiate it from those areas protected by copyright."); *Hit–Tix,* 919 F.Supp. at 738 ("The plaintiff's claim for unfair competition is preempted by federal copyright law because the right asserted is identical to the rights exclusively protected by federal law."); *see also Marvullo v. Gruner & Jahr AG & Co.,* No. 98 Civ. 5000(RLC), 2001 WL 40772 (S.D.N.Y. Jan.17, 2001) ("Here too, the extra element of commercial immorality in plaintiff's state law misappropriation claim is not sufficiently 'qualitatively' different to preclude preemption.").

16. (Plaintiff's Opposition, at 16.)

**300**

### CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

**ORDERED** that defendants' motion for summary judgment as to plaintiff's first claim for copyright infringement is DE-NIED; and it is further

**ORDERED** that defendants' motion for summary judgment as to plaintiff's claim for statutory damages and attorney's fees is GRANTED, and such claims are dismissed; and it is further

**ORDERED** that defendants' motion for summary judgment as to plaintiff's second and third claims of unfair competition and tortious misappropriation of goodwill is GRANTED, and such claims are dismissed; and it is finally

**ORDERED** that all parties shall appear for a status conference with the Court on Wednesday, June 5, 2002 at 10:00 AM.

**SO ORDERED.**