Nathaniel C. CURTIS

v.

Thomas M. BENSON, Jr., The New Orleans Saints Limited Partnership, Benson Football, Inc., Benz–Saint Management Company, The LeBlanc Group, Inc., Patrick L. LeBlanc, Case Design Group, Inc. and Larry Hammill Case.

Civil Action No. 96–1333.

United States District Court,
E.D. Louisiana.

March 11, 1997.

Keith Eric Gisleson, Wilbur Anthony Toups, III, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, LA, for Plaintiff.

Geoffrey J. Orr, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, LA, Thomas P. Anzelmo, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, LA, for Thomas M. Benson, Jr., Benson Football, Inc., Benz–Saints Management, Benz–Saints Co.

Robert A. Mahtook, Jr., Crawford & Lewis, Baton Rouge, LA, for LeBlanc Group, Inc., Patrick L. LeBlanc.

Denise C. Puente, George Jeffrey Rizzo, Simon, Peragine, Smith & Redfearn L.L.P., New Orleans, LA, for Case Design Group, Inc., Larry Hammill Case.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., Senior District Judge.

Before the Court are Motions for Summary Judgment filed on behalf of Larry H. Case, Case Design Group, Inc. (referred to collectively as the "Case" defendants), Patrick L. LeBlanc, LeBlanc Group, Inc. (referred to collectively as the "LeBlanc" defendants), and Thomas M. Benson, Jr., The New Orleans Louisiana Saints, L.P., Benson Football, Inc., Benz–Saints Management Co., L.L.C., and Benz–Saints Company (referred to collectively as the "Benson" defendants). Defendants urge the Court to dismiss the plaintiff architect's Lanham Act, copyright infringement, state law unfair trade practices and tort claims against them.

The matter was noticed for oral hearing on Wednesday, January 22, 1996. Plaintiff, Nathaniel C. Curtis ("Curtis") timely filed formal opposition. A barrage of reply briefs ensued. Thereafter the matter was deemed submitted for decision on the briefs and the documents of record. For the reasons hereinafter stated the Court DENIES summary judgment in large part, GRANTS summary judgment in small part and DEFERS RULING on the issues of preemption under the Federal Copyright Act and plaintiff's entitlement to statutory damages under the aforesaid act pending further briefing.

## I. BACKGROUND.

On April 17, 1996, the plaintiff Curtis, an architect, filed the instant complaint against the Benson defendants (i.e., non-architect defendants) and the Case and LeBlanc defendants (architect defendants) alleging: (1) unfair competition under section § 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1051 *et seq.*, and the common law;[1] (2) copyright infringement under 17 U.S.C. § 101 (the federal Copyright Act) and the *common law;*[2]

---

1. Section 43(a) of the Lanham Act imposes liability where a person's acts place into commerce a good or service containing a false designation of origin. 15 U.S.C. § 1125.

2. Copyright protection automatically arises from the moment a work is created. A successful claim of copyright infringement entails proof of ownership of a valid copyright and copying, or

infringement, of protected portions of copy copyrighted work. Architectural plans and drawings are protected by copyright law as "pictorial, graphic, and sculptural works" and "architectural work" 17 U.S.C. § 102(a)(5) & (8). An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or

**350**

(3) unfair trade practices under the Louisiana Unfair Trade Practices and Consumer Protections Act (LUTPA) L.R.S. 51:1401 *et seq.*;[3] and violation of La.Civ.Code Art. 2315 *et seq.*

Essentially, plaintiff's allegations are that: (1) as to the Lanham Act, the architect defendants aided and abetted by the Benson defendants knowingly used Curtis' proprietary work product without his permission and falsely designated Curtis' work product as their own, all of which allegedly constitutes a false description of origin, a false description, and a false representation within the meaning of 15 U.S.C. § 1125 and unfair competition as defined therein, with knowledge of the unauthorized use of Curtis's proprietary work product and of the falsity of designation of origin and false representation of his work as the work product of the defendant architects, thus depriving Curtis of the income he is entitled as true owner; (2) as to copyright infringement, that since March, 1992, and continuing monthly during 1995 and 1996, and particularly in July 1995, defendants reproduced, distributed, promoted and used Curtis's work product for substantial additions and capital improvements to the Louisiana Superdome without his permission to do so and that defendants continue to pass off the design of the capital improvements of the Superdome as their own, in violation of federal copyright laws; (3) as to LUTPA and Article 2315, plaintiff reasserts the basis of his Lanham Act and copyright infringement claims in support of his state law unfair trade practices and tort claim.

Curtis claims that beginning in 1992 and continuing on through 1996 the architect defendants with help of Benson were provided with plaintiff's original designs and technical drawings of the Superdome—that is, plaintiff's 1967 plans for the original design and construction of the Superdome and plaintiff's 1987 technical drawings for the renovation/modification of Dome which was commissioned by Benson. Plaintiff alleges that both his 1967 and 1987 plans are copyrighted and that *without his permission* the defendants used and copied his propriety works for their commercial gain and to his detriment.

## II. CONTENTIONS OF THE PARTIES.

### A. Defendants' Contentions.

The defendants contend that the undisputed facts establish that any intellectual property rights the plaintiff may have had in the 1967 technical drawings were lost on account of his donation of his intellectual property rights to Tulane University when he transferred custody of such plans to the Tulane Southeastern Architectural Archives. Additionally, defendants contend that such plans were published without a copyright notice and became part of the public domain. As to plaintiff's 1987 plans, defendants argue that any copyright protection was lost because the plans were not registered within 5 years and after the plans were published without appropriate notice.

The defendants further contend that plaintiff's claims of copyright infringement are barred by prescription. Alternatively, the Case defendants mention in passing that Curtis is not entitled to statutory damages

---

drawings. *Id.* at § 101. In the case at bar, Curtis was issued certificates of copyright registration for his architectural drawings/designs for the Superdome and later capital improvements to the Superdome. See Certificate of Registration No. VA 798–182 (Architectural/Technical Drawings of the Louisiana Superdome) issued to Nathaniel C. Curtis, April 17, 1996; and Certificate of Registration No. VAu 361–592 (Architectural Drawings of Additions and Improvements to the Louisiana Superdome) issued to Nathaniel C. Curtis, April 17, 1996; and Certificate of Registration No. VAu 361–593 (Technical Drawings of Additions and Improvements to Louisiana Superdome) issued to Nathaniel C. Curtis, April 17, 1996.

**3.** The Louisiana Unfair Trade Practices Act proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LSA–R.S. 51:1405. Louisiana cases have defined "an unfair trade practice" as a practice which "offends established public policy" and which is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to any person including business consumers or competitors." *Roustabouts, Inc. v. Hamer,* 447 So.2d 543, 548 (La.App. 1st Cir. 1984).

and attorney's fees in connection with his federal Copyright Act claims.[4]

With respect to prescription, defendants argue that all claims under the Lanham Act and corollary state statutes are perempted for acts which occurred more than a year prior to the institution of this suit. Finally, the Benson defendants mention that defendants plaintiff's state law claims under LUTPA and Article 2315 *et seq.* are preempted by the federal Copyright Act.[5]

#### B. Curtis's Contentions.

Plaintiff points out that *his* 1967 technical drawings of the Louisiana Superdome created prior to January 1, 1978, automatically acquired statutory copyright on January 1, 1978, and thus, registration was not a condition to copyright. Essentially it is plaintiff's position that it is beyond cavil that his architectural drawings were copyrightable—(1) his 1967 drawings depict one of the most original pieces of architecture in the world; and (2) his 1987 drawings are derivative works with new originality imposed thereon.

Plaintiff counters that no "publication" of his original 1967 or 1987 plans occurred since: (1) no other similar Superdome has been constructed; (2) the Louisiana Superdome has never been put on the market for sale to the public; (3) copies of plans were only available to individuals as was necessary to construct and/or repair and/or maintain the Superdome and not for illegitimate and improper purposes such as the $20.5 million capital improvement scheme directed by Benson and orchestrated by the defendant architects. Moreover, plaintiff's summary judgment evidence is to the effect that any publication of his plans and drawings by the defendants or any publication of the alleged infringing plans prepared by Case occurred

at the defendants direction *without* his permission.

Curtis aptly points out that the defendants have admitted copying his plans several different ways on hundreds of occasions. Curtis contends that in 1992 the defendants were advised both by himself and others that he *owned* the plans for the Superdome. Despite the fact that defendant architects were so advised in order to save time and the expense entailed in preparing their own "measured drawings", plaintiff contends defendants used his plans for their own commercial profit without permission and compensation.

As to prescription, Curtis contends that the majority of courts considering the state limitation periods applicable to Section 43(a) Lanham Act claims have found them most comparable to state-law fraud claims and applied the state fraud limitations period.

#### III. ANALYSIS.

Summary Judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine material issue of fact and that the moving party is entitled to judgment as a matter of law." FRCP Rule 56(c). Summary Judgment is inappropriate if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See, Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2nd Cir.1994).

■ Plaintiff's allegations and the summary judgment record submitted in support of Curtis' position are clearly to the effect that the plans provided to the architect defendants by Benson and/or with the Benson defendants' aid and influence [6] were copies of

4. See, Case Defendants' Original Brief in Support of Motion for Summary Judgment at p. 18; and Case Defendants' Reply Brief at p. 3.

5. See, Benson Defendants' Original Brief in Support of Motion for Summary Judgment, at p. 28.

6. Plaintiff's counsel documents that Benson individually and the Saints personally contracted with Curtis in 1987 to perform the capital improvements and additions which are the subject

of this lawsuit. Moreover, the summary judgment evidence submitted on behalf of the plaintiff architect, Curtis, indicates that the Case defendants were acting on behalf of Benson and the Saints, which entities stood to profit immensely from the improvements to the Superdome. See, Curtis's Response to Defendants' Reply Briefs, at pp. 13–15 (outlining some of the direct evidence suggesting liability on the part of the Benson defendants).

plaintiff's original copyrighted works. Further, plaintiff's submissions suggest that the plans prepared by the architect defendants' at Benson's direction, were derivative works based upon plaintiff's copyrighted works. Further the summary judgment submissions on behalf of the plaintiff indicate that any publication of his architectural drawings occurred without his permission and thus publication did not occur.

In summary, evidence detailed and documented by Curtis in the summary judgment record is sufficient to defeat summary dismissal of his claims. Curtis' evidence is to the effect that the architect defendants, aided and abetted by the Benson defendants, infringed his copyrights on numerous occasions and in a number of ways including, ultimately constructing the modifications and capital improvements to the Superdome in accordance with plans which were derivative of plaintiff's original copyrighted works, and ·that all of the aforesaid defendants have profited substantially thereby.[7]

Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright...." Although the Copyright Act expressly creates liability only for the direct copyright infringers, it is well-settled that third parties can be held liable for the infringing activities of another. *See, Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 432–36, 104 S.Ct. 774, 784–85, 78 L.Ed.2d 574 (1984); *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.,* 778 F.2d 89, 92 (2nd Cir.1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers."); *Ez-Tixz, Inc. v. Hit-Tix, Inc.,* 919 F.Supp. 728, 732 (S.D.N.Y.1996).

In the case at bar, plaintiff has adduced facts that suggest that each of the defendants had a measure of control over the alleged infringing activities as well as a financial interest in the infringement. Codefend-

ants' actual and/or constructive knowledge of the Case defendants' alleged infringing activities are factual issues in considerable dispute between the parties. Summary judgment is therefore inappropriate regarding the issues of direct infringement, vicarious liability and contributory infringement.

Curtis' claims that the architect defendants are liable for utilization, copying and "false designation" of his work are well-documented in plaintiff's summary judgment submissions. Whether the Benson defendants (i.e., nonarchitect defendants) are liable for contributing to and/or aiding the copying and false designation of his 1967 and 1987 designs and technical drawings all of which contain the professional architectural seal and personal signature of Nathaniel C. Curtis, Jr., F.A.I.A. shall remain an issue for trial on the merits. Both the 1967 plans and the 1987 plans are the subject of a Certificate of Registration issued by the United States Copyright Office.

The Court now addresses defendants' contention that the recently discovered Inter Vivos Donation executed by Mssrs. Curtis and Davis in favor of Tulane University demonstrates that in no uncertain terms Curtis donated his intellectual property rights with the respect to the original plans and thus, Curtis has no copyright claim and no standing to sue. The main issue ·is the effect, if any, of the aforesaid Inter Vivos Donation on Curtis' copyright claims *vis a vis* his drawings of the original Superdome and his 1987 plans for the renovation of Superdome, a derivative work.

There is nothing clear and unambiguous about the *Inter Vivos* Donation at issue. If that were the case, Tulane University could have intervened in the captioned proceedings long before now and levelled its aim at any recovery by Curtis.

The Donation Inter Vivos is subject to the following conditions: (1) that the property will be placed in the architectural archives in a way that will contribute to its security and

---

**7.** Plaintiff painstakingly details and documents that the LeBlanc defendants, prime contractor for architectural services for the Superdome in 1993 and 1994, subcontracted most of the design work to the Case defendants in September of 1994. Plaintiff points out that both groups share in the contract proceeds and that the alleged infringing designs are marked with the seal of both the Case Group and the LeBlanc Group.

preservation; (2) that the property shall be made available to scholars for research purposes; and (3) that the property will not be sold, traded or dispersed during the lifetime of the plaintiff without his prior consent.

Whether or not Tulane is a licensee with respect to the subject architectural drawings, and whether or not Curtis is a copyright owner in whole or in part, are all disputed issues of material fact. No doubt, parole evidence will be admitted for the purpose of explaining the terms of the subject *Inter Vivos* Donation. Concomitantly, whether the plaintiff Curtis was the proper registrant of the copyright and/or has standing to pursue his copyright infringement claims are similarly contested issues of material fact. Query: Must Tulane University be joined as a necessary or indispensable party?

■ Plaintiff more than amply details and documents alleged violations of basic copyright law and the requirements of fair dealing, which violations (according to plaintiff's submissions) have *continued* through 1996. As plaintiff's counsel aptly points out in his response brief, whether pre-April 1993 copyright violations are prescribed cannot be resolved on summary judgment. Factual issues abound with respect to the issues of lack of disclosure and concealment of violations on the part of the architect defendants. These seriously disputed material issues of fact will no doubt turn on credibility determinations made by the trier of fact.

For summary judgment purposes, prescription does not appear to be a problem. Plaintiff has painstakingly documented evidence in the summary judgment record which suggests that the Benson defendants not only caused the Southeastern Architectural Archives to copy plaintiff's plans for a commercial venture involving Case and Benson, but also that additional copying and use of plaintiff's alleged proprietary work by the Case and LeBlanc defendants occurred at the instance of the Benson defendants as late

as 1995 and 1996—that is, less than one year prior to filing suit in this Court.

Counsel for plaintiff points out that Case has admitted to copying Curtis' plans on numerous occasions and computer copying Curtis' plans in 1995 and 1996 never once requesting plaintiff's permission to do so. Counsel for plaintiff further points out that despite correspondence apprising the defendants that the architectural plans/drawings at issue constitute plaintiff's proprietary works, defendants continued to use and copy his works without ever requesting his permission to do so. Curtis' summary judgment evidence indicates that the nature and extent of defendants' alleged wrongdoing remained undetected until July of 1995, when Case produced "his plans" pursuant to arbitration proceedings involving Curtis, Benson and the New Orleans Saints.

Summary judgment is clearly inappropriate in this case regarding plaintiff's copyright claim under 17 U.S.C. § 101, which is governed by a three year statute of limitations. Copying of the plaintiff's Superdome plans by the defendants allegedly began in 1992 and continued from 1994 through the 1996 time period. Plaintiff's counsel argues persuasively that there is no question but that massive copying was performed by the defendants, the contested issues of fact reside in whether violations of the Copyright Act and infringement occurred. The factual and legal basis for Curtis's claims in the captioned matter are patent.[8] Defendants' requests for the imposition of sanctions are particularly inappropriate in this case.

■ Turning to the issue of prescription of plaintiff's Lanham Act claims, the Act establishes no limitations period for claims alleging unfair competition or misdesignation under the Act. Because there is no corresponding federal statute of limitations, the district court must look to "the most appropriate" or the "most analogous" state statute of limitations for purposes of prescription.

---

**8.** Proof of and recovery pursuant to Curtis's LUTPA claims overlap entirely with any recovery of damages available under his copyright act and infringement claims in this matter. Partial summary judgment dismissing Curtis' Louisiana Unfair Trade Practices claim on the ground that it is

preempted by the Federal Copyright Act would in no way affect evidence adduced or the order of proof at the time of trial. Moreover, in no event will the Court afford plaintiff a double recovery and the plaintiff, most apparently, does not intend to seek one.

Section 45 of the Lanham Act explicitly states that the federal policy underlying the Act is, *inter alia,* "to protect persons engaged in ... commerce against unfair competition" and "to prevent ***fraud*** and deception in such commerce by the use of reproductions copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127 (emphasis supplied) In *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191 (2nd Cir.1996), the Second Circuit noted that "both intent and fraud play an important role in all Lanham Act claims." The Second Circuit in *Conopco* concluded that Section 43(a) pertaining to false representations is most analogous to New York's six year fraud statute. 95 F.3d at 192.[9]

Counsel for plaintiff argues persuasively that the federal policy of Section 43(a) is best effected by not limiting such claims by the narrow one-year *peremptive* period applicable to LUTPA claims. Considering Curtis' allegations against the defendants and the evidence detailed in the summary judgment record, this Court agrees that one-year prescriptive period for fraud under Louisiana law is most analogous and is applicable to Curtis' Lanham Act claims.

■ Turning to the issue of preemption under the federal Copyright Act, facts pled in support of Curtis' claims for relief under the Lanham Act and the Copyright Act allegedly also constitute violations of Louisiana's Unfair Trade Practices Act and Civil Code Article 2315.[10] The Louisiana act proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LSA–R.S. 51:1405. Defendants make a passing reference to the effect that the plaintiff's state law claims must be dismissed because they are preempted by federal copyright law.

Basically, plaintiff alleges that he created certain architectural designs and drawings which the defendants appropriated for their own use without his permission and without paying him compensation, knowing plaintiff created said drawings and considered them his property. While the actions alleged are "unfair" and "unethical" under LUTPA, the issue raised, albeit obliquely and without argument or explanation, is: whether the plaintiff's LUTPA and Article 2315 claims are qualitatively different from plaintiff's copyright claim.

There may be some merit in defendants' contention that plaintiff's claims for unfair competition and violation of Civil Code Article 2315 are preempted by federal copyright law. The summary judgment record is incomplete as defendants have failed to address the pertinent inquiry the Court must make in order render a decision granting partial summary judgment in this case dismissing plaintiff's state law claims as preempted by the federal Copyright Act. In light of that, it is no small wonder that counsel for plaintiff similarly failed to address the pertinent issues under the particular facts of this case.

A state common law or statutory claim is preempted by Section 301 of the Copyright Act if (1) the work at issue is within the subject matter of copyright as defined in sections 102 and 103 of the Copyright Act, and (2) the state-law right created is equivalent to any of the exclusive rights within the general scope of the copyright as specified by section 106 of the Copyright Act.[11] Section 106 of the Act grants to the copyright owner the exclusive right to reproduce the copy-

---

9. See also, *Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.,* 934 F.Supp. 796, 804 (S.D.Tex. 1996) (noting that neither the Fifth Circuit nor Texas Courts have ruled directly on the appropriate statute of limitations for Lanham Act claims but that the large majority of federal courts that have considered the issue as to Section 43(a) claims have held that such claims are most comparable to fraud claims, and have applied the fraud limitations period.). The district court in *Derrick Mfg.* concluded that the Texas four-year limitations for fraud was applicable to plaintiff's Lanham Act claims. *Id.* at 804 and 813.

10. See, Plaintiff's Complaint, at paras. 48 through 51.

11. *Kregos v. Associated Press,* 3 F.3d 656, 666 (2nd Cir.1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2nd Cir.1992); *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 428 (8th Cir.1993).

righted work, prepare derivative works and to distribute copies of the work. 17 U.S.C. § 106.

Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law. Section 301 preempts only those state law rights that " 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law." [12]

There is no preemption if " '[a]n extra element is required instead of or in addition to the acts of reproduction, distribution, or display, in order to constitute a state-created cause of action.... A state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.' " [13] Preemption analysis involves a determination of whether as a matter of law the nature of the plaintiff's state-created rights are so qualitatively similar to the rights protected by the Copyright Act as to be deemed equivalent and, consequently, preempted.[14]

Considering counsels' failure to fully address the issues inherent in preemption analysis, the Court will defer ruling on the issue of preemption pending the submission of supplementary briefs by counsel for the parties addressing the pertinent areas of inquiry. In making its determination, this Court will not simply focus upon the label affixed to the state law causes of action, but rather upon " 'what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.' " [15]

Finally, the Court addresses defendants' brief statement to the effect that plaintiff's claim for attorney's fees and statutory damages [16] for copyright infringement must be dismissed as a matter of law. The Copyright Act provides that a prevailing plaintiff is entitled to either (1) actual damages sustained by the plaintiff and the defendant's profits from its infringement; or (2) statutory damages pursuant to 17 U.S.C. § 504(c). Defendants merely mention in passing that in the event that the plaintiff is successful, he is not entitled to elect statutory damages and thus partial summary judgment is appropriate.

Under 17 U.S.C. § 504(c)(1), a copyright owner may elect to recover statutory damages instead of actual damages and profits. A plaintiff is not entitled to elect statutory damages or to receive attorney's fees, however, if

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Whether the plaintiff's claim for statutory damages and attorney's fees with respect to his copyright claim should be dismissed, has not been briefed to the Court.

Under section 412, infringement "commences" when the first act of infringement in a series of on-going discrete infringements

---

**12.** *Computer Assocs.*, 982 F.2d at 716.

**13.** *Kregos*, 3 F.3d at 666.

**14.** Professor Nimmer has explained the distinction between "passing off" [i.e., essentially false representation of origin] and "reverse passing off", and its effect on preemption analysis as follows:

 If A claims that B is selling B's products and representing to the public that they are A's, that is passing off. If, by contrast, B is selling B's products and representing to the public that they are B's [when presumably they are A's], that is not passing off. A claim that the latter is actionable because B's product repli-

cates A's, even if denominated "passing off," is in fact a disguised copyright infringement claim, and hence preempted.

1 *Nimmer on Copyright* § 1.01[B][1][e], at 1–25, n. 110. See also, *Waldman Publishing Corp. v. Landoll, Inc.*, 848 F.Supp. 498, 505 (S.D.N.Y.), *vacated on other grounds*, 43 F.3d 775 (2nd Cir. 1994) ("Reverse passing off" claim is equivalent to a claim for copyright infringement).

**15.** *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d at 716.

**16.** Plaintiff's Complaint, at p. 15, para. 9.

occur.[17] Courts have explained that alleged acts of infringement that occur after the copyright at issue is registered do not constitute new acts of infringement but a continuation of the infringement that commenced prior to the registration.[18]

The acts of infringement alleged in this case are allegedly on-going. Counsel for plaintiff has relied on the on-going conduct theory, *inter alia*, to defeat prescription. In his opposition memorandum, counsel for plaintiff points out that a review of the plans and drawing produced by Case in discovery show single drawings with multiple dates showing changes and emendations.[19] In his own pleading Curtis alleges that the defendants infringed his copyright "at least as early as March, 1992, and continuing monthly during 1995 and 1996, and especially in July of 1995. . . ."[20] Registration of the subject architectural drawings and designs issued thereafter.

This Court will entertain supplementary briefs regarding whether factual issues preclude a determination that the plaintiff is ineligible for statutory damages and attorney's fees with respect to his claims under the federal Copyright Act.

Accordingly, and for all of the above and foregoing reasons,

IT IS ORDERED that defendants' motions for summary judgment are hereby GRANTED IN PART, deleting plaintiff's unfair trade practices claims which are based upon acts of the defendants that predate the one-year peremptive period provided in LUTPA.

IT IS FURTHER ORDERED that the Court reserves ruling on the issues of: (1) whether complete preemption of the plaintiff's state law claims obtains in this particular case pursuant to the federal Copyright Act; and (2) whether the plaintiff's claim for statutory damages pursuant to the federal Copyright Act should be stricken. Counsel for defendants shall file their narrowly tailored briefs on these two partial summary judgment issues no later than Wednesday, April 2, 1997. The plaintiff's brief in response shall be filed with the Court no later than April 16, 1997, following which briefing schedule the matter shall be deemed submitted for decision on the summary judgment record.

IT IS FURTHER ORDERED that counsel the parties shall simultaneously file written memoranda with the Court no later than April 2, 1997 addressing the issue of whether Tulane University must be joined in these proceedings as a necessary or indispensable party.

IT IS FURTHER ORDERED that in all other respects defendants' motions for summary judgment are DENIED.

IT IS FURTHER ORDERED that defendants' requests for sanctions are DENIED.

---

17. *Singh v. Famous Overseas, Inc.,* 680 F.Supp. 533, 535–36 (E.D.N.Y.1988), *aff'd,* 923 F.2d 845 (2nd Cir.1990).

18. *Id.* at 535–36.

19. Plaintiff's Memorandum in Opposition, at p. 44.

20. Plaintiff's Complaint, at para. 44.