IOWA STATE UNIVERSITY RESEARCH FOUNDATION, INC., an Iowa Corporation, Plaintiff,

v.

AMERICAN BROADCASTING COMPANIES, INC., a New York Corporation, and ABC Sports, Inc., a New York Corporation, Defendants.

No. 75 Civ. 3353 (KTD).

United States District Court, S. D. New York.

Dec. 14, 1978.

---

Burgess, Dinklage & Sprung, New York City, for plaintiff, by Leonard L. Horn, New York City.

**LUMBARD, Circuit Judge:** *

Plaintiff Iowa State University Research Foundation, Inc. ("Iowa State"), an Iowa Corporation, brings this action for copyright infringement against defendants American Broadcasting Companies, Inc., and ABC Sports, Inc. ("ABC"), both New York corporations.[1] Iowa State alleges that ABC has infringed Iowa State's copyright in a student-produced film about Olympic wrestler Dan Gable.

By agreement of the parties, the two-day bench trial on September 21 and 22, 1978 was limited solely to the issue of defendants' liability. The case was tried upon an agreed statement of certain facts, supplemented by the testimony of witnesses. Upon this record the court holds defendant ABC liable for infringing plaintiff's copyright through two unauthorized showings of portions of plaintiff's film on national television during defendants' 1972 Olympic games telecast. With respect to plaintiff's claim that an independently created film dealing with the same subject matter as the copyrighted film was in fact copied from the copyrighted work, however, the court concludes that there was no copying prohibited by the copyright act.

During the 1970–71 school year, James Doran and another student at Iowa State University, under the supervision of Professor Richard Kraemer, produced a film entitled "Champion". Approximately 28 minutes in length, the film presented a sports biography of Iowa State champion wrestler Dan Gable, who later went on to win an Olympic gold medal in wrestling at the 1972 Olympic games in Munich. Predictably for works of this genre, the film included shots of Gable at home, on the campus, and on

Coudert Brothers, New York City, for defendants, by Michael J. Calvey, New York City.

---

\* Sitting by designation.

1. The substantive law governing this action for damages appears in the pre–1976 copyright act, 17 U.S.C. § 101 *et seq.* The court's subject matter jurisdiction is derived from 28 U.S.C. § 1338. Since defendant ABC is a New York corporation with its principal office in Manhattan, venue is properly laid under 28 U.S.C. § 1400(a). The defendants do not dispute this court's in personam jurisdiction over them for the purposes of this action.

the wrestling mat, interspersed with interviews of Gable's family, Gable's teammates, and Gable himself.

In 1971 Iowa State University obtained a statutory copyright in "Champion", and received from the United States Register of Copyrights a related Certification of Registration of a Claim to Copyright, under registration number Mp 22034. That registration and related copyright remained in full force and effect through 1972. A written agreement, dated February 21, 1970, between Doran and Iowa State recited that the university would have both the title to and the copyright in the film as compensation for the university's financial support. This agreement also gave Doran the right to negotiate and license the first television showing of the film, but only with "the full knowledge and consent of the University." Finally, the university retained all residual rights in "Champion", including the right to rent the film to groups and to negotiate subsequent television showings.

James Doran worked for ABC intermittently from 1967 to the time of trial, both while a student at Iowa State and after his graduation in April, 1972. While working for ABC, Doran approached several commercial television networks, including ABC, in an effort to negotiate the first television showing of the film. These efforts proved unsuccessful.

In August, 1972, while working in New York at ABC Sports as a videotape operator and filer, Doran overheard Don Ohlmeyer and another ABC Sports producer discussing their lack of background film material on Dan Gable, at that time one of America's leading hopes for a gold medal in wrestling at the Olympic games in Munich a few weeks later. When Doran told Ohlmeyer that his film "Champion" might solve ABC's problem, Ohlmeyer expressed an interest in seeing the film. Doran then retrieved the film from his locker and gave it to Ohlmeyer so that Ohlmeyer could decide how much, if any, he wished to use. Without Doran's knowledge, ABC made a complete videotape copy of the film and eventually used almost three minutes of this copy in its coverage of the 1972 Olympic games.

Although the testimony of Doran and Ohlmeyer is not altogether in agreement, it is undisputed that Doran and Ohlmeyer never reached any agreement governing the terms under which ABC could use the film. Doran testified that after Ohlmeyer viewed the film, Ohlmeyer told him that he was "practically sure" he could use some of it but that he was unsure how much. Doran replied that if Ohlmeyer could tell him approximately how much he planned to use, they could make an agreement. When Ohlmeyer then offered $300 for the use of an undecided amount of the film, Doran "didn't acknowledge the $300 because I didn't really think he was serious about it, but he was talking money and I was trying to sell him something. I felt I had accomplished something. He liked the film and he was talking some amount of money but he couldn't tell me how much." When asked if he felt that a deal had been finalized, Doran testified, "I was confident that we hadn't arrived to an agreement." Later, Doran testified, "If they had an option, it's quite vague, but I never felt we had reached an agreement one way or another." Doran never informed Ohlmeyer of the contractual restrictions on his ability to negotiate the first television showing of "Champion". Nor did Doran ever inform Iowa State of these negotiations to obtain its consent should ABC decide to use the film.

Ohlmeyer testified that after making an edited sequence from Doran's film, he decided that he wanted to use parts of it. Ohlmeyer then asked Doran if he could use parts of the film, and offered Doran $250, "if I could get the money." Because he was on a limited budget, and because ABC had already decided to send a film crew to Iowa to film a piece on Gable, he did not wish to pay any more.

When Ohlmeyer left for Munich, Doran did not know for sure whether Ohlmeyer would use the film. In fact, Ohlmeyer did use a seven or twelve second segment of "Champion" during the Olympic previews and a two-and-a-half minute segment during the games themselves. Plaintiff also

alleges that a seven-minute film on Gable independently produced by ABC was in fact an infringing copy of "Champion". Ohlmeyer did not notify Doran that "Champion" had been used in any way and has never made any attempt to pay Doran or anyone else for the use of the film.

According to Doran, he would never have learned of ABC's use of "Champion" had he not watched the Olympics himself. After seeing parts of "Champion" used in ABC's Olympic telecast, Doran approached ABC officials (other than Ohlmeyer) who denied any such use. Doran thereupon notified Iowa State which corroborated the fact of use by ABC after ABC again denied such use. This suit followed.

Doran never suggested that ABC could use the film without making some payment. Indeed, Doran had no authority to make any arrangement with ABC, or anyone, without the "full knowledge and consent" of Iowa State. Although ABC had no knowledge of the limitation on Doran's authority, ABC knew, from the legend on the film, that it was the property of Iowa State. It made no inquiry of Doran regarding his authority to permit use of the film. To be sure, Doran's conflicting interests as an employee of ABC as well as agent for Iowa State made it difficult for him to insist on a clear understanding of some sort before use was made of the film. But knowledge of Doran's dual position makes it all the more inexcusable for ABC to make use of the film without making inquiry to Iowa State. Being on notice that Iowa State, and not Doran, was the owner of the copyright, ABC could not in good faith assume that Doran could fairly represent Iowa State while also serving as an employee of ABC.

■ In these circumstances ABC's claim that its use of the film was a "fair use" for which no compensation need be paid is entirely lacking in merit. ABC knew full well that some payment was expected for any use of the film [2] and it was on notice that Iowa State was the owner of the right and that it must either secure Iowa State's con-

sent or be assured of the limits of Doran's authority to give consent. As noted above, Doran was obligated to obtain Iowa State's approval before he could grant any license.

■ The defendants appropriated something of value for which, from the nature and extent of their business, they were well prepared to pay, if necessary, as evidenced by the expense which they incurred in sending a film crew to Iowa to film credible background material regarding Gable. The defendants are therefore liable to Iowa State for damages under the old Copyright Act (17 U.S.C. 101 *et seq.*).

■ With respect to plaintiff's claim that a seven-minute film on Gable independently produced by ABC was in fact an infringing copy of "Champion", the court finds that there was no copying prohibited by the Copyright Act. True, both films show Gable working out at home, jogging in his neighborhood, walking to class, and competing in wrestling matches. Both show interviews of Gable's family, his teammates, his coaches, and of Gable himself. Both show newspaper clippings. But these shots would be readily expected by any sports fan. The content of this type of film is predictable and cannot, by the very nature of the subject matter, vary greatly from film to film even when two films are produced entirely independently. Although some, indeed many, similarities are inevitable, this is not copying of the type prohibited by the Copyright Act. Plaintiff having failed to show the existence of any similarities which could be traced not merely to the constraints inherent in the production of this type of film, but to actual imitation of plaintiff's unique creative endeavor, this claim must be dismissed. *See Alexander v. Haley, et al.,* 460 F.Supp. 40 (S.D.N.Y.1978) (Frankel, J.).

This memorandum constitutes the findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

SO ORDERED.

---

**2.** Certainly ABC's rejection of Doran's earlier attempt to sell the film to ABC in 1972 cannot

be squared with any later belief on ABC's part that the film was available for free.