Peter B. **KAPLAN**, Plaintiff,

v.

THE STOCK MARKET PHOTO AGENCY, INC., Bruno Benvenuto, Fox News Network, L.L.C., and Crain Communications, Inc., Defendants.

No. 99 CIV. 10218 AGS.

United States District Court,
S.D. New York.

March 6, 2001.

L. Donald Prutzman, New York City, for Peter B. Kaplan.

Dori Ann Hanswirth, New York City, for Fox News Network, L.L.C. and Crain Communications, Inc.

Joseph M. Burke, New York City, for Defendants.

### OPINION AND ORDER

SCHWARTZ, District Judge.

This action relates to two photographs, one published by plaintiff and one by defendants, which depict a frequently portrayed metropolitan scene: a businessperson contemplating a leap from a tall building onto the bustling city street below. Plaintiff brings claims for copyright infringement under 17 U.S.C. §§ 101 *et seq.* and for unfair competition arising out of defendants' publication of their photo-

graph. Defendants move for summary judgment on the ground that the photographs are not substantially similar.[1] For the reasons set forth below, the motions are granted.

## I. Factual Background[2]

Plaintiff Peter B. Kaplan ("Kaplan") is a professional photographer who created a photograph in 1988 entitled "Wing Tips Over the Edge" ("Kaplan's photograph"). (Defendant Fox News Network, L.L.C. and Crain Communications, Inc.'s Statement Pursuant to Local Rule 56.1 ("Def.56.1") ¶ 1(FC))[3]; Plaintiff's Response to Defendants' Statements Pursuant to Local Rule 56.1 ("Pl.56.1") ¶ 1(FC). The photograph depicts a businessperson standing perilously on the ledge or roof of a tall building looking down onto a car-lined street, and is taken from the viewpoint of the businessperson. (First Amend. Compl., Ex. A.) Kaplan's photograph was copyrighted together with three other pictorial works, and his registration became effective on May 15, 1989. (Def. 56.1 ¶ 2(FC); Pl. 56.1 ¶ 2(FC).) Defendant The Stock Market Photo Agency, Inc. ("Stock Market"), a New York corporation with its principal place of business in New York, serves as an agent for photographers in licensing rights in their works to others for various uses, including advertisements. (Def. 56.1 ¶ 3(FC); Pl. 56.1 ¶ 3(FC).) Defendant Fox News Network, L.L.C. ("Fox"), a Delaware corporation with its principal place of business in New York, engages in the gathering, broadcasting, cablecasting, and other dissemination of news and information, and engages in advertising for its services. (Def. 56.1 ¶ 4(FC); Pl. 56.1 ¶ 4(FC).) Defendant Crain Communications, Inc. ("Crain"), a corporation with its principal place of business in Chicago, Illinois, engages in the publication of business-related newspapers, magazines, and other periodicals. (Def. 56.1 ¶ 5(FC); Pl. 56.1 ¶ 5(FC).) Defendant Bruno Benvenuto ("Benvenuto") is a professional photographer who used Stock Market as his agent at times relevant to the instant action. (Def. 56.1 ¶ 6(FC); Pl. 56.1 ¶ 6(FC).)

Kaplan's photograph was published in an annual compilation of photographs entitled "The Creative Black Book," which Kaplan alleges is distributed to photograph agencies such as Stock Market, advertising and design agencies, and professional photographers. (Affidavit of Peter B. Kaplan dated June 14, 2000 ("Kaplan Aff.") ¶¶ 9, 10; Stock Market's Statement of Material Facts in Support of Motion for Summary Judgment ("Def.56.1") ¶ 7(S); Pl. 56.1 ¶ 7(S).) According to Kaplan, as a result of the distribution of that advertisement, and his subsequent distribution of reprints thereof, access to his photograph is "widespread among photographers, stock photo agencies and advertisers." (Kaplan Aff. ¶ 11.)

In late 1993 and early 1994, Christopher Thomas Associates, Inc., an advertising agency, conducted an advertising campaign for its client Tamron, a manufacturer of camera lenses. (Kaplan Aff. ¶ 12; Affidavit of Bruno Benvenuto in Support of Defendants' Motion for Summary Judgment dated May 11, 2000 ("Benvenuto Aff.") ¶ 2.) The purpose of the campaign,

---

1. Defendants Fox News Network, L.L.C. and Crain Communications, Inc. filed a motion jointly; defendant The Stock Market Photo Agency, Inc. filed a separate motion. Defendant Bruno Benvenuto did not formally move, but filed an affidavit in support of the other defendants' motion for summary judgment. The Court's ruling on the motions of the other defendants also encompasses Benvenuto.

2. The following facts are undisputed unless otherwise noted.

3. The designation "(FC)" refers to the Rule 56.1 statement of defendants Fox News Network, L.L.C. and Crain Communications, Inc. The designation "(S)" refers to the Rule 56.1 statement of The Stock Market Photo Agency, Inc. Equivalent references are provided for Kaplan's Rule 56.1 statement, which responds separately to each of defendants' Rule 56.1 statements.

according to defendants, was to introduce a wide angle lens that produced photographs showing a "flat field perspective" without distortion at the edges. (Benvenuto Aff. ¶ 2; Affidavit of Clint Schramm dated May 11, 2000 ("Schramm Aff.") ¶ 2.) Defendants state that an executive at the advertising agency wished to create a photo advertisement showing the shoes of a businessman standing on the ledge of a tall building directly opposite another tall building having sharp horizontal and vertical lines, a perspective which would demonstrate the new lens' lack of distortion. (Schramm Aff. ¶ 4.) The executive subsequently created a prototype image for, *inter alia*, distribution to potential bidders. (Schramm Aff. ¶¶ 4, 6, Ex. A.) Both Kaplan and Benvenuto were bidders, and Benvenuto was awarded the assignment to take, and subsequently did take, the photograph for the advertisement. (Kaplan Aff. ¶¶ 12, 17; Benvenuto Aff. ¶ 3.) Like Kaplan's photograph, it depicted a businessperson standing on the ledge or roof of a tall building looking down onto a car-lined street, from the viewpoint of the businessperson.[4] (Def. 56.1 ¶ 1(S); Pl. 56.1 ¶ 1(S).)

Benvenuto subsequently reworked the photograph he took for the Tamron advertisement into a "final image," which he submitted to Stock Market for licensing purposes. This is the photograph at issue in this case ("Benvenuto's photograph").[5] (Def. 56.1 ¶ 8(FC); Pl. 56.1 ¶ 8(FC); Def. 56.1 ¶¶ 1, 3(S); Pl. 56.1 ¶¶ 1, 3(S); Benven-

uto Aff. ¶ 5; Kaplan Aff. ¶ 18.) In July 1997, Fox placed an order to have an advertisement published in a Crain publication, *Electronic Media*, for its affiliate news service Fox News Edge. (Def. 56.1 ¶¶ 10, 11(FC); Pl. 56.1 ¶¶ 10, 11(FC).) A New York advertising agency, hired by Fox, created the advertisement using Benvenuto's photograph, which had been licensed to the agency by Stock Market for the benefit of Fox. (Def. 56.1 ¶¶ 9, 11–13(FC); Pl. 56.1 ¶¶ 9, 11–13(FC); Def. 56.1 ¶ 5(S); Pl. 56.1 ¶ 5(S).) The advertisement appeared in *Electronic Media* on September 15, 1997, with the title "The World Looks Very Different From The Edge." (Def. 56.1 ¶ 7(FC); Pl. 56.1 ¶ 7(FC); Def. 56.1 ¶ 6(S); Pl. 56.1 ¶ 6(S); First Amend. Compl. ¶ 23, Ex. C.)

Kaplan filed the instant action on October 4, 1999, and an Amended Complaint was filed on April 25, 2000. In his copyright infringement claim,[6] Kaplan alleges that Benvenuto's photograph "closely imitates," and thereby "infringes the copyright" in Kaplan's photograph. He further claims that because Stock Market licensed the "imitation" to the other defendants, "depriving [Kaplan] of that potential sale, and literally taking bread out of [his] and [his] family's mouth," all defendants are liable as infringers. (Kaplan Aff. ¶ 6; First Amend. Compl. ¶¶ 22, 23, 29, 35, 36.) Kaplan also asserts an unfair competition claim,[7] alleging that defendants "misappropriated the value of" Kaplan's photo-

---

4. Kaplan claims that he sent a copy of his photograph to the ad executive in connection with his bid, and suggests that Benvenuto used it, or "recreated" it, in taking his photograph. (Kaplan Aff. ¶¶ 14–15, 19, Ex. B.) Both Benvenuto and the executive deny having seen or having used Kaplan's photograph in connection with the Tamron advertising campaign. (Benvenuto Aff. ¶¶ 6, 8; Schramm Aff. ¶¶ 5, 8; Reply Affidavit of Clint Schramm ¶¶ 3–5.) Because defendants have conceded (or at least assumed) access to Kaplan's photograph, this factual disagreement is not material for the purposes of the instant motions.

5. The details of the two photographs are addressed in Part II.B.2, *infra*.

6. The First Amended Complaint contains two causes of action for copyright infringement, one against all defendants for the licensing and publication of Benvenuto's photograph in *Electronic Media*, and the other against Stock Market and Benvenuto for the licensing of the photograph to other unnamed entities. These claims are treated together for the purpose of the instant motions.

7. The Complaint does not specify whether the unfair competition claim is brought under federal or state law. This claim is addressed in Part II.C, *infra*.

graph "and passed off, and attempted to pass off, Benvenuto's work as Kaplan's original work." (First Amend. Compl. ¶ 42.)

## II. Discussion

### A. Summary Judgment Standard

A district court may grant summary judgment only if it is satisfied that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, which may be satisfied if it can point to the absence of evidence necessary to support an essential element of the non-moving party's claim. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, all inferences and ambiguities are resolved in the non-movant's favor. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994) (citations omitted). If the moving party meets its burden, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat the motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *See Kolp v. New York State Office of Mental Health,* 15 F.Supp.2d 323, 326 (W.D.N.Y.1998). When reasonable minds could not differ as to the import of the proffered evidence, then summary judgment is proper. *See Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Bryant v. Maffuc-*

*ci,* 923 F.2d 979, 982 (2d Cir.1991). Moreover, "conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir. 1996).

### B. Copyright Claim

#### 1. Determination of Substantial Similarity

A plaintiff must prove two elements in order to establish copyright infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of that work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The parties do not dispute that Kaplan obtained a valid copyright that encompasses his photograph.[8] Therefore, in order to prevail, Kaplan must establish that defendants unlawfully copied his photograph through the publication of Benvenuto's work. In the absence of direct evidence of copying, *see Rogers,* 960 F.2d at 306 (affirming permanent injunction in a "rare scenario" where sculptor directly copied photograph), copying is proven by showing "(a) that the defendant had access to the copyrighted work, and (b) the substantial similarity of protectable material in the two works." *Kregos v. Assoc. Press,* 3 F.3d 656, 662 (2d Cir. 1993); *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 139–40 (2d Cir.1992).

In this case, defendants move for summary judgment on Kaplan's copyright claim on the ground that Kaplan cannot satisfy the second part of the test, i.e. that the photographs are not substantially similar as a matter of law.[9] The determination

---

8. The Court also infers such ownership from Kaplan's copyright registration certificate, presented by Kaplan as an exhibit to his submissions on the instant motions. (Kaplan Aff., Ex. A); *see Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir.1992) ("The Copyright Act makes a certificate of registration from the U.S. Register of Copyrights prima facie evidence of the valid ownership of a copyright,

*see* 17 U.S.C. § 410(c), though that presumption of ownership may be rebutted.")

9. For purposes of the instant motions, The Stock Market and Benvenuto have conceded that they had access to Kaplan's photograph, while Fox and Crain do not so concede. (Stock Market's Memorandum of Law in Sup-

of whether two objects appear similar is not so demanding; however, assessing whether the protectable elements of two works are substantially similar as a matter of copyright law is "an inexact science." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir.1994). In making this determination, the Court must bear in mind that substantial similarity does not require literally identical copying of every detail. *See Rogers*, 960 F.2d at 307 (citing *Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir.1958)). Rather, such similarity is determined by the "ordinary observer" test. Under this test, the necessary inquiry is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work," *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966); or, stated another way, whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960); *see also Fisher–Price*, 25 F.3d at 123. Further, where, as in this case, the Court compares products containing both protectable and unprotectable elements, it must "exclude comparison of the unprotectable elements from its application of the ordinary observer test." *Fisher–Price*, 25 F.3d at 123 (citing *Laureyssens*, 964 F.2d at 141 (referring to this as "the more discerning ordinary observer test")). In comparing works for infringement purposes, under either ordinary observer test, the court must examine the works' similarity in light of the their "total concept and feel." *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1003 (2d Cir.1995); *Hogan v. DC Comics*, 48 F.Supp.2d 298, 309 (S.D.N.Y.1999). Where " 'the similarity concerns only non-copyrightable elements of plaintiff's work', or 'no reasonable trier of fact could find the works substantially similar', summary judgment is appropriate." *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir.1996)

(quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986)); *see also Arica Institute v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992).

The Court must also recognize that substantial dissimilarity between two works will not automatically relieve the alleged infringer of liability; "[i]t is only where the points of dissimilarity exceed those that are similar, and those similar are—when compared to the original work—of small import quantitatively or qualitatively that a finding of no infringement is appropriate." *Rogers*, 960 F.2d at 308 (citation omitted). Nonetheless, dissimilarity can be important in determining whether there is, or is not, substantial similarity. *See Durham Industries, Inc. v. Tomy, Inc.*, 630 F.2d 905, 913 (2d Cir.1980) (noting that "we have also recognized that numerous differences tend to undercut substantial similarity"). Specifically, "dissimilarity in realization or expression can make clear ... that the similarity extends only to unprotectable concepts or ideas." *Attia v. Soc. of the New York Hosp.*, 201 F.3d 50, 58 (2d Cir.1999).

The determination of which elements of a work are protectable is also an inexact science, and is case-specific. It is a fundamental principal of copyright law that a copyright does not protect an idea or concept but only the expression of that idea or concept. *Id.* (quoting *Kregos*, 3 F.3d at 663); *Rogers*, 960 F.2d at 307 (citing *Durham Indus.*, 630 F.2d at 912 (stating that the "focus must be on the similarity of the expression of an idea or fact, not on the similarity of the facts, ideas, or concepts themselves")); *Kisch v. Ammirati & Puris, Inc.*, 657 F.Supp. 380, 382 (S.D.N.Y. 1987) ("Others are free to copy the original [subject matter]. They are not free to copy the copy.") (citation and internal quotations omitted). Similarly, the doctrine of *scenes a faire* holds that sequences of events necessarily resulting from the choice of setting or situation, *Walker v.*

port of Summary Judgment at 6; Def. 56.1 ¶¶ 14–16(FC).)

*Time Life Films, Inc.,* 784 F.2d 44, 50 (2d Cir.1986), or "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic," *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 979 (2d Cir.1980), are not protectable under the copyright laws. The distinction between an idea and its expression is "elusive" and is often an "impenetrable inquiry." *Williams,* 84 F.3d at 588. While there is no firm gauge to enable the Court to determine when an "imitator has gone beyond copying the 'idea,' and has borrowed its 'expression,' the inquiry often turns on the level of abstraction or generalization of the works being compared." *Attia,* 201 F.3d at 54 (quoting *Peter Pan,* 274 F.2d at 489). The Court is guided in this task by the oft-cited passage of Learned Hand in *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir. 1930):

> Upon any work, . . . a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the most general statement of what the [work] is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the [author] could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended.

■ With regard to photographs in particular, a copyright derives from "the photographer's original conception of his subject, not the subject itself." *Kisch,* 657 F.Supp. at 382 (citation and internal quotations omitted). Protectable elements "may include posing the subjects, lighting, angle, selection of film and camera, [and] evoking the desired expression," along with other variants. *Rogers,* 960 F.2d at 307; *Gross v. Seligman,* 212 F. 930, 931 (2d Cir.1914) (noting pose, background, light, and shade as potentially protectable); *Andersson v. Sony Corp. of Am.,* No. 96 Civ. 7975, 1997 WL 226310, at *2 (S.D.N.Y. May 2, 1997) (stating that "[p]rotectable elements include lighting, shading, positioning, and timing").

### 2. The Two Photographs Are Not Substantially Similar

■ Turning to the two photographs in the instant case, the Court finds that nearly all the similarities between the works arise from noncopyrightable elements, thus rendering the works not substantially similar. The subject matter of both photographs is a businessperson contemplating a leap from a tall building onto the city street below. As the photograph's central idea, rather than Kaplan's expression of the idea, this subject matter is unprotectable in and of itself.[10] Moreover, as the situation of a leap from a tall building is standard in the treatment of the topic of the exasperated businessperson in today's fast-paced work environment, especially in New York, the subject matter of the photographs is also rendered unprotectable by the doctrine of *scenes a faire.* Kaplan, like other artists before and after him, has chosen to express a businessperson's frustration with the world by portraying him at the top of a building; his contemplation of a leap from the edge of that building is the necessary sequence of events that follows from the chosen setting.[11] *See*

10. Scenes or images which are much less common have been held to be unprotectable ideas by the courts of this Circuit. *See, e.g., Mattel, Inc. v. Azrak–Hamway Int'l, Inc.,* 724 F.2d 357, 360 (2d Cir.1983) (finding that a superhuman muscleman doll crouched in a "traditional fighting pose" was an unprotectable idea); *Andersson,* 1997 WL 226310, at *3 (finding, based on images including a famous painting by Andrew Wyeth, that "the idea of a woman in futuristic garb becoming fascinated with an object held in her hand, is simply not protectable").

11. The Court's conclusion in this regard is supported by photographic exhibits submitted by both sides, which depict the same scene: a businessperson on the edge of a building apparently contemplating a leap to the street below. (Benvenuto Aff. Exs. C, F; Affidavit of

*Williams,* 84 F.3d at 587 (stating the similarities reflecting sequences of events that necessarily result from the choice of setting or situation are not protectable).

Drawing on Judge Hand's conceptual framework as set out in *Nichols,* Kaplan argues that the concept of a "distraught *businessman* standing on the ledge of a tall city building" misdefines his photograph's central idea by selecting "too concrete a level of abstraction." (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl.Mem.") at 10.) (emphasis added). Instead, he suggests that the idea "might be expressed" at a higher level, namely, by "the depiction of a *person* contemplating a leap from a city building." (*Id.*) (emphasis added). The Court acknowledges, as defendants do, that the concept of Kaplan's photograph "may" be expressed more generally, at the level of the person, and that such idea may itself be unprotectable under the doctrine of *scenes a faire;* however, this idea is clearly not the most accurate characterization of the concept embraced by the photographs at issue in this case. (Reply Memorandum of Law in Support of Motion by Defendants Fox News Network, L.L.C. and Crain Communications, Inc. for Summary Judgment at 3 & n. 1.) By suggesting this higher level of abstraction, Kaplan merely overgeneralizes the concept embraced by his photograph.[12]

Kaplan's reliance on *Direct Marketing of Va., Inc. v. E. Mishan & Sons, Inc.,* 753 F.Supp. 100 (S.D.N.Y.1990) in support of his position on the appropriate level of abstraction is unavailing. In *Direct Mar-*

*keting,* the court found that "the idea of designing a watch face to show a full-bodied cat which appears to 'see' a mouse as the mouse circles the cat in the manner of a second hand is an unprotectable idea." *Id.* at 104. However, it found the likelihood of infringement where the plaintiff's expression of that idea involved "using 'America's favorite cat, the Tabby' in a sitting position facing to the left with a stylized rather than realistic rendering of a mouse." *Id.* Far from making a case for the application of a more general level of abstraction to the photographs here, *Direct Marketing* supports the Court's conclusion: the concept of a businessman contemplating a leap from a city building, like that of a cat chasing a mouse, is a purely unprotectable idea. Only if certain aspects of the expression of that idea are copied, e.g., the particular cat or person used as a model, or the stylistic elements of the image itself, does the possibility of infringement arise.

In this case, almost all of the similarities in expression between the two photographs are unprotectable elements or themes that flow predictably from the underlying subject matter. Let us begin by examining the businessperson. Both photographs depict him standing on the roof or ledge of a tall building, with his shoes partially extended over the edge. However, such positioning is essential to the businessperson's contemplation of a suicide leap; it would be impossible to depict the photograph's subject matter without portraying him in this pose. *See Kisch,* 657 F.Supp. at 382 (stating that a plaintiff's copyright may not monopolize various po-

L. Donald Prutzman dated June 15, 2000 ("Prutzman Aff."), Ex. A.)

**12.** While isolating the concept of the photographs at the level of the "person" may make the similarities between them appear more pronounced, it would not render Kaplan's "expression" of that concept protectable under the copyright laws. No matter which level is employed to analyze the photographs, Kaplan's depiction of a businessman contemplating a leap from a tall building onto the

street below is a common concept unprotectable by copyright. *Cf. Gund, Inc. v. Smile Int'l, Inc.,* 691 F.Supp. 642, 645 (E.D.N.Y.1988) ("The idea of a dog is certainly general. So too is the idea of a more or less realistic, non-rigid stuffed toy dog that 'flops' down on its stomach. It is a common sight to see puppies act in this way. The question therefore is whether defendant has copied features ... unnecessary to express the idea of such a 'floppy' dog.").

ses used, and "can protect only [p]laintiff's particular photographic expression of these poses and not the underlying ideas therefor"); *see also Durham Indus.*, 630 F.2d at 913 (stating that "where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying"); *Hogan*, 48 F.Supp.2d at 310–11 (finding that several elements of allegedly infringing story's characters and plot flowed directly from the unprotectable idea of a half-human, half-vampire character on a quest to discover his origins); *Iowa State Univ. Research Found., Inc. v. Am. Broadcasting Companies*, 463 F.Supp. 902, 904 (S.D.N.Y.1978) (finding no copyright violation where allegedly infringing film contained "inevitable" similarities inherent in the nature of the subject matter). The Court concludes that the similarities relating to pose are clearly encompassed by the unprotectable subject matter of the photographs. *See Mattel*, 724 F.2d at 360 (finding that pose of superhuman muscle doll was unprotectable).

Second, each businessperson is dressed in similar attire, a pinstripe suit and wing-tip shoes, although the suits and shoes in the respective photographs are different in color.[13] Such is the businessperson's typical garb, and therefore might reasonably be expected to appear in any expression of the unprotectable idea in question here. *See Andersson*, 1997 WL 226310, at *3 (stating that the subject's wardrobe was incorporated into the idea found to be unprotectable); *Great Importations, Inc. v. Caffco Int'l, Inc.*, No. 95 Civ. 0514, 1997 WL 414111, at *4 (S.D.N.Y. July 24, 1997) (finding plaintiff could not claim protection for the "depiction of baby angels as round-cheeked, smiling or bemused, and wearing loose robes or drapery" because "these are stereotypical attributes of baby angels ...indispensable to the generalized idea of baby angels, analogous to unprotected

*scenes a faire* "); *Kerr v. New Yorker Magazine, Inc.*, 63 F.Supp.2d 320, 324 (S.D.N.Y.1999) (finding that the idea of a New York skyline as a "Mohawk" haircut might reasonably be expected to include other unprotectable elements, such as eyes, nose, mouth, a figure in profile, and New York buildings); *see also* Andy Nazzaro, "Differences in Dress Don't Signify Arrogance," *in The Times Union*, Feb. 15, 2001, at A10, *available in* LEXIS, News Library, Curnws File (describing typical image of "a New Yorker in a pinstripe suit and wing-tip shoes"); "Washington People: Clinton Nominees Inching Toward Top Financial Posts," *in The American Banker*, July 26, 1999, at 4, *available in* LEXIS, News Library, Curnws File (reporting remarks describing "the stereotypically bland banker in a pinstriped suit and wing-tip shoes"); Margaret Littman, "Editor's Choice: One Way to Achieve Peak Performance," *in Crain's Chicago Business*, Sept. 21, 1998, at 6, *available in* LEXIS, News Library, Arcnws File ("When you picture yourself climbing the corporate ladder, you likely envision the required attire as pinstripes and wing tips, not Lycra and Air Jordans."); Jeet S. Bindra, "Not Nirvana ... yet; overcoming social prejudices in the corporate setting," *in Across the Board*, Nov. 1, 1998, *available in* LEXIS, News Library, Arcnws File ("Just a quick look around showed you that the halls of management were decked with white, Anglo–Saxon males dressed in three-piece, pinstriped suits and shiny, wing-tipped shoes."); Francine Parnes, "A Man in Uniform," *in The Denver Post*, Sept. 17, 1998, at E–01, *available in* LEXIS, News Library, Arcnws File (referring to the "charcoal pinstriped suits and black wing tips you find in any business setting"). In his opposition papers, Kaplan does not dispute defendants' characterization of his subject's wardrobe as generic; in fact, one of the images he claims is a noninfringing work depicts a businessman dressed exactly the same way. (Prutzman

---

13. Kaplan's businessperson wears a dark charcoal suit and shiny black shoes, while the subject of Benvenuto's work wears a lighter, grey suit and shiny brown shoes.

Aff., Ex A.) Thus, the wardrobe depicted in both photographs does not support a finding of substantial similarity.

Third, both photographs are taken from a similar angle or viewpoint, namely, that of the businessperson looking down at the street below.[14] In arguing for a finding of substantial similarity, Kaplan alleges that Benvenuto misappropriated the "particular expression" of "the lower pant legs and shoes, the sheer side of the building, and the traffic below." (Pl. Mem. at 11.) However, while there are parallels in such details, there are also substantial differences: Kaplan's photograph shows only the very bottom of the pants legs, while Benvenuto's photograph shows the legs from about the knees down; the photographs are taken from different locations, depicting different buildings, roads and vehicles. In addition, as defendants point out, in order to most accurately express the idea of a businessperson's contemplation of a leap, the photograph must be taken from the "jumper's" own viewpoint, which would (i) naturally include the sheer side of the building and the traffic below, and (ii) logically restrict the visible area of the businessperson's body to his shoes and a certain portion of his pants legs, depending on the angle from which the businessperson observes the scene below, i.e. how far he is bending over. Thus, the angle and viewpoint used in both photographs are essential to, commonly associated with, and naturally flow from the photograph's unprotectable subject matter. See Durham Indus., 630 F.2d at 913; Gund, 691 F.Supp. at 645 (stating that "similarity in expression is noninfringing to the extent the nature of the creation makes similarity necessary").

There may be, as Kaplan suggests, many other angles from which to depict the scene, e.g., by shooting "the person on top of the building from other viewpoints, such as from either side, the rear, a three-quarter view, or a view from slightly above and to the side." (Pl. Mem. at 11.) He

further states that "it is also easy to conceive of a particularly dramatic treatment of the idea that could be done from somewhere below the person leaning over the building edge with the camera looking upward." (Id.) However, the most common, and most effective, viewpoint from which to convey the idea of the "jumper"—whether he is merely a "person" or a "businessperson"—remains that of the "jumper" himself. (See Benvenuto Aff., Exs. C–F.)

■ Even where, as in this case, the most observable similarities between two works relate to elements flowing directly from their subject matter, summary judgment must be denied where an ordinary observer would determine the "total concept and feel" of the works to be substantially the same. See Knitwaves, 71 F.3d at 1003; Hogan, 48 F.Supp.2d at 309. However, after a careful examination of the two photographs at issue here, the Court concludes that the differences between them far outweigh the similarities, quantitatively and qualitatively, such that no reasonable jury could find that the two works are substantially similar. See Rogers, 960 F.2d at 308. An examination of the photographs' background, perspective, lighting, shading, and color, which courts have traditionally highlighted as protectable elements, see supra, supports the Court's conclusion.

First, the background and perspective of the two photographs are significantly different. Kaplan's photograph is a horizontal, panoramic image emphasizing breadth. The businessperson is looking down from the rooftop to the wide street and the cars below. Although a small portion of a building across the street is left visible, the majority of the image consists of the street and cars. Moreover, because of a large shadow running across the entire image, the viewer is drawn directly to the shoes of the businessperson and the rooftop, which, taken together, comprise less than one half

---

14. Defendants describe this as a "point-of- view shot."

of the image. In contrast, Benvenuto's photograph is a more narrow, vertical photograph emphasizing depth. It directs the viewer across the street to a tall building having sharp horizontal and vertical lines, which fills about two-thirds of the field of view.[15] The viewer's eyes follow these lines, not the businessperson's eyes, down to the street.

The activity on the street and next to the businessperson are also substantially different in both photographs. Kaplan's photograph shows two streets merging into one, with mostly yellow taxicabs moving one way from left to right in several lanes of traffic. In contrast, Benvenuto's photograph depicts a narrow street with two lanes of cars and larger vehicles moving in both directions. Up on the smooth, concrete ledge in Benvenuto's photograph, the businessperson is flanked to his left by a brown-and-white pigeon and a maroon briefcase. Kaplan's subject stands alone on a worn, metallic ledge.

Second, differences in lighting, shading, and color cause the photographs to convey contrasting "feels" or "moods." *See Kerr*, 63 F.Supp.2d at 325–26 (describing different "feel" of two works based on the same idea, one "sketchy" and "edgy" and the other "serene" and "thoughtful"); *Kisch*, 657 F.Supp. at 384 (comparing "underlying tone or mood" of photographs in judging substantial similarity). Kaplan's photograph contains a very distinct shadow that runs diagonally across the entire image, which directs the viewer toward the lower part of the image, specifically the businessperson's shoes and the rooftop. Such shadow, in concert with the metallic ledge and pervasive dark colors—black, brown, and various shades of grey—conveys a somber or reflective mood. Benvenuto's photograph, on the other hand, contains virtually no shading. The building across the street is bathed in bright sunlight, which aids in directing the viewer's attention to the building's geometric structure. As a result of this use of light, and brighter colors—which include red, white, yellow, blue, and green, in addition to grey and black—Benvenuto's work conveys more a mood of adventure or curiosity than one of reflection or depression. This lighter mood is also conveyed by the image's pervasive yellowish-brown hue, and the presence of the pigeon, which seem to remove the viewer from the reality of the businessperson's unstable, and precarious, position. Kaplan's photograph has no such tonal overlay, no feathered creature, and is ominously realistic in its portrayal of the businessperson's contemplation of a leap.

Kaplan suggests that the arguable differences between the photographs do not excuse their substantial similarity for the purposes of infringement. (Pl. Mem. at 12–15.) While this may be true in cases where similarities between the works are either quantitatively or qualitatively important, the Court finds otherwise here. In particular, the comparison of the photographs shows that there are no significant similarities, in fact no notable similarities at all, in their protectable elements. The dissimilarity in the realization and expression of the photographs, discussed *supra*, demonstrates that the only observable similarities extend to unprotectable elements associated with the underlying subject matter.[16] *See Attia*, 201 F.3d at 58.

15. As discussed *supra*, the geometric features of the building apparently were important to the advertising agency for which the photograph was originally taken, in order to demonstrate the Tamron lens' lack of distortion. (Schramm Aff. ¶ 4.)

16. Kaplan's reliance on *Kisch*, 657 F.Supp. at 384, is unavailing. In that case, the court denied summary judgment where, unlike here, there were several similarities in the protectable elements of two photographs: in particular, the subjects were in the same pose, and the photographs were taken in the exact same location, with the same distinctive mural in the background, and with similar lighting, camera angle, and camera position. The Court also declines to find persuasive Kaplan's reference to two cases from outside of this Circuit. In *Sharpshooters v. Retirement Living Publishing Co.*, 932 F.Supp. 286 (S.D.Fla.1996), which involved two photographs of a husband serving breakfast in bed

Thus, the Court concludes that any similarities between the protected elements of Kaplan's and Benvenuto's photographs "are of small import quantitatively and qualitatively," such that a rational trier of fact would not be able to find they are substantially similar. *Rogers*, 960 F.2d at 308. In designing his photograph, Benvenuto added his own originality to the underlying, unprotectable idea of a businessperson on contemplating a leap from a tall building to the street below, and his expression of that idea is not infringing as a matter of law. *Cf. id.* ("[H]ad [defendant] simply used the *idea* presented by the photo, there would not have been infringing copying.") Accordingly, summary judgment must be awarded to defendants on Kaplan's copyright claim.

## C. Unfair Competition Claim

Kaplan's unfair competition claim alleges that defendants both "misappropriated the value of" Kaplan's photograph and "passed off, and attempted to pass off, Benvenuto's work as Kaplan's original work." (First Amend. Compl. ¶ 42.) While defendants have not asserted arguments in support of the dismissal of this claim in their respective submissions on the motions, they nevertheless request dismissal of the entire action. (Fox's and Crain's Notice of Motion for Summary Judgment (requesting an Order "dismissing this action as against them"); Stock Market's Notice of Motion for Summary Judgment (requesting an Order "dismissing plaintiff's complaint on the ground that plaintiff's copyright claim fails as a matter of law").) Therefore, by implication, the instant summary judgment motions encompass Kaplan's unfair competition claim. Like the copyright claim, the Court finds

to his wife, the Court denied summary judgment where there were several similarities in precise details that were not necessary to the expression of the underlying idea. Finally, in *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir.2000), the Court found that sufficient similarities in the protected ele-

that this claim must be dismissed as a matter of law.

■■■ The Complaint does not specify whether the unfair competition claim is asserted under state or federal law. To the extent that Kaplan brings his claim under state law for the copying of his work, i.e. the misappropriation branch of unfair competition, it is preempted by the federal copyright laws. *Warner Bros., Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 246 (2d Cir.1983) (citing *Durham Indus.*, 630 F.2d at 918–19); *Arden v. Columbia Pictures Indus., Inc.*, 908 F.Supp. 1248, 1263 (S.D.N.Y.1995) (finding that a state law unfair competition claim that "[d]efendants misappropriated [plaintiff's work] for their own commercial gain and profit" sounds in misappropriation and is thereby preempted); *see also Kregos v. Assoc. Press*, 3 F.3d 656, 666 (2d Cir. 1993). To the extent Kaplan brings his claim under either federal or state law for a false designation of origin, it must be dismissed because he has failed to establish that the photographs at issue are substantially similar. Although Kaplan asserts that Benvenuto passed off his work as Kaplan's, Kaplan's factual allegations of copying do not reflect a "passing off" claim, where the defendant labels his product as the plaintiff's product, *see, e.g., Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 784 n. 7 (2d Cir.1994); *Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 414 (2d Cir.1982) (describing typical case where defendant misbrands his product as plaintiff's and thereby injures plaintiff), but rather a "reverse passing off" claim, where the defendant misappropriates elements of the plaintiff's creation and attempts to pass off those elements as his own, *see Waldman*, 43 F.3d at 780–81. In particular, Kaplan

ments of the plaintiff's and defendants' photographs precluded summary judgment, including aspects of the photographs' angle, lighting, shading, and positioning. Here, there is nothing substantial in common between the two photographs beyond their unprotectable elements.

alleges that Benvenuto had access to Kaplan's photograph, and created a "derivative work" by copying it when designing the photograph that appeared first in the Tamron lens advertisement, and later in the Fox advertisement, without crediting Kaplan. (Compl.¶¶ 20–29.) Kaplan has not alleged, and the record does not reflect, that defendants ever represented, indicated, or implied that Benvenuto's photograph came from another source, i.e. was Kaplan's photograph, which would implicate a passing off analysis. *See Int'l News Service v. Associated Press*, 248 U.S. 215, 258, 39 S.Ct. 68, 63 L.Ed. 211 (1918) (stating that "in passing off cases ... the wrong consists in fraudulently representing by word or act that defendant's goods are those of plaintiff"); *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F.Supp. 926, 933–34 (S.D.N.Y.1996). Because Kaplan's factual allegations implicate reverse passing off, the Court so construes Kaplan's unfair competition claim. *See American Movie Classics*, 922 F.Supp. at 934 (construing plaintiff's claim, which it had denominated as "passing off," as part of the "reverse passing off variety," where plaintiff had not alleged that the films in question came from another source, but rather that defendant took plaintiff's goods and passed them off as their own); *see also Marvullo v. Gruner & Jahr AG & Co.*, No. 98 Civ. 5000, 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001) (finding no passing off claim where, *inter alia*, plaintiff did not allege that defendants repre-

sented their own photographs as ones created by plaintiff).

 While unfair competition claims asserting "reverse passing off" claims are generally not preempted by the copyright laws, *Warner Bros.*, 720 F.2d at 247 (citing 1 *Nimmer on Copyright* §§ 1.01[B][1] n. 47, 2.12 n. 25 (1983)); H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132 (1976) ("Section 301 is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute."), they nevertheless must be dismissed where, as here, the plaintiff cannot establish substantial similarity as a matter of law. *See Waldman*, 43 F.3d at 783; *see also Attia*, 201 F.3d at 60 ("If *Waldman*'s adoption of the "substantial similarity" test in the context of reverse passing off were not the rule, the principle of copyright that denies protection to ideas, concepts, and processes would become a dead letter. A plaintiff unable to prevail under the law of copyright could simply restate his claim as one of unfair competition for reverse passing off. Ideas would no longer be in the public domain."); *Kerr*, 63 F.Supp.2d at 326 (dismissing reverse passing off claim where plaintiff failed to prove substantial similarity in the copyright context). Thus, because Kaplan has failed to establish that the two photographs at issue in this case are substantially similar, his unfair competition claim must be dismissed.[17]

**17.** The Court's finding would remain unchanged even if it were to construe Kaplan's unfair competition claim as one for "passing off," rather than "reverse passing off," or if the claim were to assert misappropriation under federal law. Like all other forms of trademark infringement, the plaintiff must establish a likelihood of consumer confusion in order to succeed on either variety of "passing off" claim. *See Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) (per curiam) ("It is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are

likely to be misled, or indeed simply confused, as to the source of the goods in question.") (citing *Maternally Yours v. Your Maternity Shop, Inc.*, 234 F.2d 538, 542 (2d Cir.1956)); *Kregos v. Assoc. Press*, 795 F.Supp. 1325, 1336 (S.D.N.Y.1992), *aff'd*, 3 F.3d 656 (2d Cir.1993) (stating same in the context of unfair competition claim for passing off); *Nat'l Baseball Hall of Fame and Museum, Inc. v. All Sports Promotions Group, Inc.*, No. 99 Civ. 3635, 2001 WL 196755, at *11 (S.D.N.Y. Feb. 20, 2001) (stating that federal unfair competition claim requires that plaintiff establish a likelihood of consumer confusion) (citation omitted). The Second Circuit has stated that "the absence of substantial similarity [under

## III. Conclusion

For the foregoing reasons, defendants' motions for summary judgment are granted in full, and the case is dismissed. The Clerk of the Court is directed to close the file in this action.

SO ORDERED.

copyright law] leaves little basis for asserting a likelihood of confusion or palming off" for purposes of a trademark claim, *Warner Bros.*, 720 F.2d at 246 (citing *Durham Indus.*, 630 F.2d at 918), and has judged likelihood of confusion based on substantial similarity, *see Waldman*, 43 F.3d at 784; *cf. Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961) (listing similarity of marks as a factor in traditional likelihood of confusion analysis); *see also Arden*, 908 F.Supp. at 1264

("Because the works at issue in this case lack substantial similarity, there is no basis for a finding of likelihood of confusion sufficient to support [trademark] claim."). Accordingly, in this case, the Court finds that Kaplan is precluded from asserting passing off or misappropriation claims under either federal or state law, because he has not established the substantial similarity between the two photographs necessary to establish likelihood of confusion.